131 So.2d 99 (1961)
James J. HUGHES, Sr.
v.
DEPARTMENT OF POLICE.
No. 266.
Court of Appeal of Louisiana, Fourth Circuit.
June 12, 1961.
*100 Laura, Danna & Simmons, Joseph J. Laura, Jr., New Orleans, for plaintiff-appellant.
Alvin J. Liska, Beuker F. Amann, New Orleans, for defendant-appellee.
Before REGAN, YARRUT and SAMUEL, JJ.
YARRUT, Judge.
This is an appeal from a ruling of the Civil Service Commission of the City of New Orleans, affirming the action of the Superintendent of Police of New Orleans in suspending for 30 days without pay and demoting Appellant (Lieut. Hughes) from the rank of Lieutenant to Patrolman for an act of insubordination. The appeal was first lodged in the Supreme Court under Constitution Art. 14, §15, Par. (O) (1), but transferred here under Art. 7, §10 (as amended by Act 561 of 1958), and Art. 7, §30 (as amended by Act 593 of 1960), LSA.
Prior to the amendments referred to supra, Art. 14, §15, Par. (O) (1), Constitution of 1921, under "Parochial-Municipal Affairs", vested in the State Civil Service Commission, and in the appropriate municipal commissions, the exclusive right to hear and decide the legality of all removal and disciplinary actions, with the right of appeal therefrom to the Supreme Court. This provision of the Constitution was not expressly amended, but was impliedly repealed by the 1958 amendment to Art. 7, §10, providing that "The following cases only shall be appealable to the Supreme Court:" (Then follows five categories, none of which includes appeals in Civil Service cases).
Whatever hiatus that may have existed in these constitutional provisions was settled when the Supreme Court transferred this appeal here, abolished its rule regulating Civil Service appeals prior to 1958, and the adoption, effective July 1, 1961, of Rule XVI of the Uniform Rules of the Courts of Appeal, as amended, revised and re-promulgated, 8 LSA-R.S., 129 So.2d XXV. We are, therefore, constrained to maintain our appellate jurisdiction which, under Const. Art. 14, §15, Par. (O) (1), is limited only to review the law, and not the facts as found by the Commission.
On April 13, 1960, by letter addressed to Lieut. Hughes by the Superintendent of Police, signed by Capt. P. J. Trosclair, Jr., Assistant Supervisor of Districts, Lieut. Hughes was notified of his suspension because he had disobeyed orders to answer *101 a question of a superior officer, in violation of the Department's rules (citing specific rule), with advice that a thorough investigation would be made and he would be notified.
On April 20, 1960, by letter addressed to Lieut. Hughes by the Superintendent, after giving a review of the Department's findings, Lieut. Hughes was advised he was reduced in rank from lieutenant to patrolman, and suspended without pay for 30 days. On appeal to the Commission, the following facts were found in confirmation of those found by the Police Department:
In the late afternoon of April 13, 1960, Deputy Superintendent Giarrusso received a telephone call relative to the ticketing of taxicabs by plainclothes officer in the area of Touro Infirmary. Giarrusso, to obtain information, dispatched Capt. Trosclair, Assistant to the Supervisor of Districts, and Capt. Sirgo, Department Planning Officer, to investigate and report.
Capts. Trosclair and Sirgo learned that a plainclothes officer, who later returned in a police uniform, had issued traffic citations, one of which was signed "Lieut. James Hughes." Capt. Trosclair promptly requested the radio dispatcher to locate Lieut. Hughes, as he was scheduled to be on duty as second platoon commander, assigned to the Second Police District.
At approximately 5:35 P.M., a patrolman located Lieut. Hughes by telephone and advised him, at Capt. Trosclair's request, that Car 421, occupied by Capts. Trosclair and Sirgo, would meet him at Robert and Freret Streets.
On approaching Capt. Trosclair, with Capt. Sirgo nearby, Lieut. Hughes immediately took an antagonistic and adamant attitude. Capt. Trosclair questioned Lieut. Hughes concerning the ticketing of taxicabs in the Touro Infirmary area and requested that Lieut. Hughes tell him whether or not he had received a complaint about violations by taxicab operators in that section. Lieut. Hughes replied that he did not need a complaint to enforce the law, that "when you see violations, you take action".
Capt. Trosclair then sought to establish Lieut. Hughes' whereabouts when he tried to reach him earlier, receiving the reply that he was in the neighborhood. When asked to state exactly where he was, Lieut. Hughes replied, "Just a couple of blocks away from here." Lieut. Hughes again refused to answer after Capt. Trosclair told him, "Lieutenant Hughes, I am ordering you to tell me where you were when we called for you."
Later, at the Second District Station, after Capt. Trosclair had discussed Lieut. Hughes' attitude and behavior with Deputy Supt. Giarrusso, Lieut. Hughes was again ordered to make a statement regarding his whereabouts. He again refused. When reminded by Capt. Trosclair that, under the Civil Service Law, he was bound to answer questions of a superior officer, Lieut. Hughes persisted in his refusal, and insisted that, under Civil Service Law, he was entitled to an attorney, and that he would not answer any questions until he had consulted his attorney.
Shortly thereafter, Lieut. Hughes spoke to the Superintendent by telephone at the latter's request. The Superintendent warned him that he must answer Capt. Trosclair's questions. Lieut. Hughes attempted to argue with the Superintendent in defiance of the latter's order to refrain from such conduct. Lieut. Hughes said he had nothing to hide. The Superintendent's reply was that, if he had nothing to hide, he should be willing to answer questions.
Upon Lieut. Hughes' insistent refusal to answer, the Superintendent spoke to Capt. Trosclair, by telephone, and directed him to suspend Lieut. Hughes.
The Superintendent, by the letter of April 20, 1960, notified Lieut. Hughes that his conduct in connection with his refusal to answer questions of Capt. Trosclair, a *102 superior officer, while he was on duty as a lieutenant of police and a platoon commander, constituted conduct unbecoming an officer, reflected discredit upon the Department, and was a flagrant violation of Art. 54 of the New Orleans Department of Police Code of Conduct, which reads:
"Art. 54Instructions from Proper Authority.
"A member shall promptly and fully abide by or execute instructions issuing from any authoritative source.
"If the instructions are reasonably believed to conflict with these Rules or other instructions, this fact shall respectfully be made known to the issuing authority. If the issuing authority elects to insist upon the execution of the instructions then only he shall be held responsible should such conflict materialize. * * *"
During the trial before the Commission, it developed that the information Lieut. Hughes would not disclose to his superiors before he consulted his attorney was that, at the time, he was having coffee with a lady friend, at her apartment. Later on, he did state, with his wife's corroboration, that he went to the lady's apartment for his wife to deliver a message. His persistent refusal to answer the question when repeatedly propounded by his superiors, and stating he first wanted to consult his attorney, left the sinister implication that he might incriminate himself.
While a Civil Service employee, under Const. Art. 14, §15, Par. (P) (1), cannot be compelled to incriminate himself, his failure to answer a proper question relating to his duties on the ground of possible self-incrimination, is itself a ground for suspension or dismissal. His persistent refusal to answer without first consulting his attorney, was either insubordination or an attempt to conceal some incriminating misconduct.
Counsel for Lieut. Hughes would have it appear that his client was excused from answering the question until he first consulted his attorney, and then was refused permission to consult his attorney before answering. The record is clear that, while he was advised he had a right to consult an attorney at any time, he had to answer the question concerning his whereabouts then and there, and without first consulting his attorney. Lieut. Hughes fully understood the situation. His only attitude, in addition to his refusal to answer, was his resentment that he should be investigated after 16 years on the police force.
The findings and conclusions of the Commission are succinctly stated by it in the record, as follows:
"It is the opinion of the Commission that the only question to be determined is whether or not appellant violated Article 54 of the New Orleans Department of Police Code of Conduct as set forth in the above quoted letter of April 20, 1960, by refusing to answer the questions propounded to him by Captain Presly J. Trosclair and to obey the direct orders of Superintendent P. A. Dayries to answer Captain Trosclair's question as to his whereabouts around 5:30 P.M., Wednesday, April 13, 1960, at which time he was supposed to be on duty. All witnesses, including appellant himself, admitted that he had committed the acts charged. At the hearing appellant sought to exculpate himself by contending that he did not wish to involve the lady at whose home he was getting a cup of coffee."
Lieut. Hughes has since voluntarily retired with a patrolman's status, but seeks a reversal of the Commission's findings, in order to be restored to the retirement rank of lieutenant, for comparable retirement pension, and to recover the loss of his 30-day suspension pay.
*103 For the reasons assigned, we find no error in the application of the law to the facts found by the Commission, and, accordingly, its ruling is affirmed; Appellant to pay the costs.
Affirmed.