REGAN, Judge.
Plaintiff, Thomas A. Clavin, a police officer possessing permanent civil service status, instituted this suit against the New Orleans Police Department, endeavoring to compel the Superintendent thereof to reinstate him to his former position, and to credit him with salary and leave that would have been due him had he not been dismissed on January 21, 1956, for conduct unbecoming an officer which he had manifested on January 8, 1956.
The plaintiff insists that the decision to dismiss him was arbitrary and discriminatory and that the penalty exacted was excessive.
The defendant, in opposition thereto, maintains that the decision to dismiss the plaintiff was made as a result of a thorough investigation of the January 8, 1956 occurrence, and the fact that the plaintiff had been guilty of the same offense[1] on two other occasions; thus the dismissal was not arbitrary and without cause and the penalty was not excessive.
The plaintiff availed himself of his constitutional right to appeal[2] the Superintendent’s action to the City Civil Service Commission, which after a hearing concluded on March 26, 1956, that the Superintendent of Police had not abused his discretion in discharging the plaintiff. It is from this ruling that the plaintiff has prosecuted this appeal, which, of course, is limited to questions of law.[3]
*400 The facts as found by the Civil Service Commission are relatively simple, and although they are not before us for review, a brief resume of them is necessary to preserve the continuity of this opinion.
On January 8, 1956, the plaintiff, who was acting sergeant for that day, and patrolman Anthony Otillio drove to the Dixiehouse Bar located in the City of New-Orleans. They visited this establishment in response to a call purportedly heard by the plaintiff through the medium of the squad car radio during Otillio’s absence from the automobile, to the effect that police assistance was requested in view of a disturbance in the bar. Upon arrival, however, the policemen were informed by the bartender that there was no disturbance therein.
Each policeman thereafter consumed at least one drink containing alcohol, which were not paid for, and they remained inside the bar for about half an hour.
The proprietor of the bar subsequently learned the truth of the foregoing incident and thereafter reported the matter to the defendant. An investigation ensued, as a result of which the plaintiff was suspended on January 14, 1956, and was later dismissed on January 21, 1956, the reasons therefor being set forth in a letter addressed to him of that date.
Inter alia, the Superintendent therein referred to the plaintiff’s misconduct not only on January 8, 1956, but also on two other occasions when he had been found consuming intoxicating liquors while on duty, and for which he had been disciplined. In one instance, in February, 1954, he had been suspended for twenty days without pay, with the added admonishment contained in a letter to him by the previous Superintendent of Police: “any recurrence of such conduct on your part in the future, will bring about far more serious action.”
Patrolman Otillio was suspended for a period of fifteen days without pay,, as a penalty for his misconduct.
Following his dismissal, the plaintiff appealed the defendant’s action to the City Civil Service Commission, which on March 26, 1956, upheld the Superintendent’s decision; the plaintiff then prosecuted this appeal.
The plaintiff does not deny his misconduct, but insists that the Superintendent acted unreasonably and in a discriminatory manner since his fellow patrolman who violated the same rules of the Police Departmental Manual in exactly the same manner had been suspended for only fifteen days whereas he had been dismissed.
The defendant, on the other hand, maintains that the action of its Superintendent was reasonable and appropriate considering all of the circumstances and, finally, that the dismissal had been affirmed by the Civil Service Commission.
The only question of law posed for our consideration is, whether, the conclusion of the Commission which found that the Superintendent had not abused his discretion in dismissing the plaintiff and suspending Otillio, was so arbitrary and discriminatory as to subject the plaintiff to the unequal protection of law and thus warrant a reversal by us.
It is obvious to us that the defendant’s Superintendent in the exercise of his discretion acted within the scope of his authority in releasing an officer who had violated the Department’s regulations on at least three occasions. It is likewise obvious to us that the Commission did not err in concluding that the penalties exacted against the plaintiff and Otillio by the Superintend *401 ent were not disproportionate since the plaintiff had repeatedly violated the rules of the Department and the last violation occurred when he was acting sergeant, the superior officer of the day.
For the reasons assigned, the ruling of the Civil Service Commission of the City of New Orleans is affirmed
Affirmed.

.Tlie record indicates the plaintiff violated Part II, Title 3, Section 1, sub-paragraphs “a” and “c” of the New Orleans Police Departmental Manual, which provides that:
“ * * * Section 1 — Members and employees shall at all times conduct themselves in a manner which is in keeping with the dignity of the Law Enforcement Profession; that is,
“(a) They shall at all times conduct themselves in a civil manner.
^ * * * *
"(c) They shall not at any time conduct themselves in a manner which may reflect discredit upon the Department of Police. * * * ”

. “There is vested in the State Civil Service Commission and in the appropriate Civil Service Commissions for the several cities respectively the exclusive right to hear and decide all appeals and the legality of all removal and disciplinary cases. * * * ” LSA-La.Const. of 1921, as amended, Art. 14, Sec. 15(0) (1).

. “ * * * The decision of the appropriate Civil Service Commission shall be final on the facts, but an appeal shall be granted to the Supreme Court of Louisiana (presently Courts of Appeal, Art. 7, Sec. 10, as amended, Nov. 195S and See. 30, as amended, Nov. 1960) on any question of law if application to the Com *400 mission is made within thirty (30) days after the Commission’s decision becomes final. The Supreme Court (Courts of Appeal, see Uniform Rules, No. XVI, July, 1961) shall promulgate rules of procedure to be followed in the taking and lodging of such appeals.” LSA-La. Const, of 1921, as amended, Art. 14, Sec. 15(0) (1).
Also, see Hughes v. Department of Police, La.App.1961, 131 So.2d 99.