165 So.2d 279

**STATE of Louisiana**

**v.**

**Gibson O. KIMBERLIN.**

No. 47031.

June 8, 1964.

Rehearing Denied July 1, 1964.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for appellant.

Benton & Moseley, by Edward Donald Moseley, Baton Rouge, for defendant-appellee.

HAMITER, Justice.

The defendant, Gibson O. Kimberlin, was indicted by the Grand Jury of East Baton Rouge Parish for violating LRS 14:138, the relevant provisions of which recite: "Public pay roll fraud is committed when:

"(1) Any person shall knowingly receive any payment or compensation, or knowingly permit his name to be carried on any employment list or pay roll for any payment or compensation from the state, for services not actually rendered by himself, or for services grossly inadequate for the payment or compensation received or to be received according to such employment list or pay roll; * * *."

The indictment charged that the defendant, between the dates of August 18, 1960 and January 15, 1961, "* * * feloniously violated Louisiana Revised Statute 14:138, thereby committing public payroll fraud in that he knowingly permitted his name to be carried on the employment list or payroll of the Office of State Fire Marshal as a Deputy Fire Marshal I and did receive payment or compensation as a Deputy Fire Marshal I of the Office of State Fire Marshal for services not actually rendered by himself, or for services grossly inadequate for the payment or compensation received, according to such employment list or payroll."

In a motion to quash the defendant alleged that the indictment was predicated in whole or in part on his transcribed testimony which he was compelled to give in an investigation conducted by the State Civil Service Commission, this in contravention of the following guaranty contained in Article I, Section 11 of the Louisiana Constitution: "No person shall be compelled to give evidence against himself in a criminal case or in any proceeding that may subject him to criminal prosecution, except as otherwise provided in this Constitution. * * *"

The motion to quash was sustained, after a hearing, and the prosecution dismissed. The state is appealing.

It is undisputed that prior to the returning of the instant indictment the State

Civil Service Commission had held a public inquiry or hearing (pursuant to Article 14, Section 15(O) (4) of the Louisiana Constitution) to investigate possible violations of the Civil Service Law and Rules by the State Fire Marshal, John E. Coon, and by two of its officers or employees, A. H. May, Jr. and Gibson O. Kimberlin (the latter is the defendant herein). Further, it is stipulated that the transcript of the evidence adduced before the Commission at such inquiry, in which was included the testimony of this defendant (summoned to appear before that body and unrepresented by counsel), was later presented to the Grand Jury for consideration during its deliberations. In such transcript (now before us) are numerous declinations by Kimberlin to answer questions asked of him; however, there are many answers to questions, propounded by the attorney for the State Civil Service Commission, that tend to incriminate him of violating the statute under which he was indicted.

The defendant's complaint is that the indictment is invalid in that the Grand Jury returned it after considering the transcript of testimony given by him under a subpoena and without either the benefit of counsel or his having been advised of the privilege against self incrimination as guaranteed by Section 11 of Article I of the Louisiana Constitution (above quoted). In opposition, the state merely takes the position that by answering the propounded questions the defendant waived his privilege against self incrimination.

■ There is merit in the complaint of the defendant, we think. He was never told by any member of the Commission that he could refrain from answering questions *that might tend to incriminate him.* True, at several points he was instructed that he did not have to reply to specific questions or that he might decline to answer. In one instance a member said: "Mr. Kimberlin, Mr. Quinn would like to ask you some questions, if you don't want to answer them, tell us that you don't and state your reasons for it." But at no time was he ever *"fully advised of his privilege against self incrimination."* The giving of this advice, according to at least two decisions of this court, is a prerequisite to the use before a grand jury of incriminating testimony of the one being indicted. See State v. Harrell, 228 La. 434, 82 So.2d 701 and State v. Jemison, 240 La. 787, 125 So.2d 363. In fact, in the first cited case we observed that a person's " * * * interrogation concerning the crime for which he was being held, without being fully advised of his privilege against self-incrimination, was tantamount to obtaining his testimony through compulsion, in violation of his constitutional rights. * * *"

■ With further reference as to whether the defendant was *"compelled* to give evidence against himself in * * * *any proceeding* that may subject him to criminal

prosecution" (to use the language of the aforequoted constitutional guaranty) our opinion is that such question must be answered in the affirmative.

Firstly, while admonished that he might refuse to give answers to the interrogatories, near the commencement of the examination he was instructed by one of the members of the Commission (apparently its chairman) as follows: " * * * If Mr. Quinn chooses to do so, or if this Commission chooses to do so, *we can ask the District Court to require you to testify* and if you refuse to testify, the District Court can take whatever action it wants. *We* have no right to hold anyone in contempt and therefore what we would like to do is let Mr. Quinn ask what questions he wants, and if you choose not to answer them, you can so state. * * *" This instruction, it seems to us, amounts to nothing less than a threat by the Commission to resort to contempt proceedings in the district court in the event of a refusal to respond to the questioning. (Italics ours.)

Secondly, it is to be noted that Article XIV, Section 15(P) (1) of the Louisiana Constitution states: "If any member of the State or City Commissions or any officer or employee in the State or City Civil Service shall willfully refuse or fail to appear before any Civil Service Commission, court, or judge, any legislative committee, or any officer, board or body authorized to conduct any hearing or inquiry, or having appeared shall refuse to testify or answer any question relating to the affairs or government of the State or city, or the conduct of any State or city officer or employee on the ground that his testimony or answers would tend to incriminate him, or shall refuse to waive immunity from prosecution on account of any matter about which he may be asked to testify at any such hearing or inquiry, *he shall forfeit his office or position and shall not be eligible thereafter for appointment to any position in the State or City Service for a period of ten years.*" Although this defendant had resigned his position a short while before the inquiry under consideration occurred, he, if he had refused to obey the subpoena issued to him or had declined to answer all of the questions propounded, would have subjected himself to ineligibility thereafter for appointment to any position in the state or city service for a period of ten years. Hence, it seems to follow that the last quoted constitutional provisions were compelling reasons for his appearing before the Commission and giving the incriminating answers used against him. (Italics ours.)

The fact that the accused herein is 45 years of age, is well educated, and has had considerable experience in police investigative work—whereas, the defendants in the Harrell and Jemison cases were not so experienced—is of no moment. Exceedingly important is that each of the three was entitled to be advised of his constitutional

right before he was compelled to incriminate himself, and that this was not done.

Consequently, we conclude that the evidence which this defendant gave before the State Civil Service Commission (where he incriminated himself under compulsion) was improperly presented to and considered by the Grand Jury of East Baton Rouge Parish; and that the indictment returned by that body, and based at least partially on such evidence, was invalid.

For the reasons assigned the judgment appealed from which sustained the motion to quash the indictment, is affirmed.

McCALEB, J., dissents with written reasons.

SUMMERS, J., dissents.

McCALEB, Justice (dissenting).

In my view, the evidence given by Kimberlin before the Civil Service Commission

was not secured by compulsion. On the contrary, the transcript of that evidence shows that Kimberlin, a mature (45 years of age) and highly intelligent man (degrees in Chemistry and Physics, Reserve Lieutenant Commander in U. S. Navy who had served as a Naval Intelligence Officer in the Korean War), was well aware of his constitutional rights to protection against self incrimination at the time he testified and that he refused to answer questions whenever he thought it was not to his advantage to do so.[1] Hence, it would have been superfluous for the Commission to have advised Kimberlin of rights of which he was perfectly cognizant and I know of no reason, under the circumstances, why the evidence he knowingly gave should not have been used against him in the grand-jury proceedings. See Crooker v. California (1958) 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448.

I respectfully dissent.

1. Time and time again, upon being interrogated, Kimberlin would state "I don't think I should answer that question". At one point in his examination he said "A. And I think when I first made my statement that I was hired, retained in an advisory capacity, I think that I have stated that very plainly and I think that is as far as I want to go." And, when he continued to respond by saying that he did not think he should answer, one of the members of the Civil Service Commission advised him that he should say "I decline to answer" and, from then on, he adopted this suggestion and "declined" to answer the questions he thought objectionable.