171 So.2d 730 (1965)
Daniel J. CALLAHAN, Jr.
v.
NEW ORLEANS POLICE DEPARTMENT.
No. 1692.
Court of Appeal of Louisiana. Fourth Circuit.
February 8, 1965.
*731 Zelden & Zelden, Sam Monk Zelden, New Orleans, for plaintiff-appellant.
Alvin J. Liska and Beuker F. Amann, New Orleans, for defendant-appellee.
Before SAMUEL, CHASEZ and BARNETTE, JJ.
CHRIS T. BARNETTE, Judge pro tem.
The appellant, Police Sergeant Daniel J. Callahan, Jr., was suspended and later dismissed, February 3, 1964, from his position of employment with the New Orleans Police Department. The letter of dismissal signed by Superintendent of Police, Joseph I. Giarrusso, representing the appointing authority, set forth in detail a number of specific charges of misconduct, including several charges of acceptance of "pay-off" money. The charges, if true, are amply sufficient to justify his dismissal.
Sergeant Callahan made timely application to the Civil Service Commission for appeal of his dismissal. It is from the ruling of the Commission on his appeal which he now appeals to this Court. The ruling complained of, and of which appellant seeks a reversal in this Court, concluded with the following decree:
"This appeal is dismissed. The Commission orders that appropriate notations be made in the State and City Civil Service records that the appellant, Daniel J. Callahan, Jr., is disqualified from eligibility to appointment to any position in the State Civil Service or in the Civil Service of any duly established classified system of any political subdivision of this State for a period of ten (10) years, beginning May 14, 1964."
Article XIV, Section 15(O) (1) of the Constitution of Louisiana, LSA, provides as follows:
"There is vested in the State Civil Service Commission and in the appropriate Civil Service Commissions for the several cities respectively the exclusive right to hear and decide all appeals and the legality of all removal and disciplinary cases. The decision of the appropriate Civil Service Commission shall be final on the facts, but an appeal shall be granted to the Supreme Court *732 of Louisiana[1] on any question of law if application to the Commission is made within thirty (30) days after the Commission's decision becomes final. The Supreme Court shall promulgate rules of procedure to be followed in the taking and lodging of such appeals."
The appellate jurisdiction of this Court is limited by the above constitutional provision, and we have no authority to disturb the Commission's findings of fact. They must be considered as final, and the question of sufficiency of factual cause for appellant's dismissal will not be considered. The question of law upon which appellant bases his appeal is a constitutional one.
When appellant's hearing before the Civil Service Commission was held, May 14, 1964, after several continuances on his motion, he was under indictment awaiting trial on three counts of bribery. Although appellant was the moving party on whose application the hearing was scheduled (along with two other discharged police officers under similar charges), he and the other two officers made no move to present their appeals; offered no witnesses and rested their cases, notwithstanding the provision in LSA-Constitution Article XIV, Section 15(N) (1), which casts upon the employee making the appeal the burden of proof.
The attorney for the appointing authority thereupon attempted to call, in turn, each of the three discharged police officers under cross-examination to which they objected. After argument and discussion of the procedural issues involved, they were called by the attorney for the City as witnesses on behalf of the appointing authority, the New Orleans Police Department. They refused to testify, claiming the rights guaranteed by the Fifth Amendment to the Constitution of the United States and Article I, Section 11 of the Constitution of Louisiana against self-incrimination. A number of other witnesses were then called who gave extensive testimony tending to support the charges against the discharged officers. At the conclusion of the hearing a factual finding against appellant was rendered on most, if not all, of the charges and the Commission's ruling concluded with the decree above quoted. Sergeant Callahan has appealed the ruling to this Court.
We find the discharge of Sergeant Callahan to have been legally justified under the facts found by the Commission and will give no further consideration to that aspect of his appeal. His disqualification from eligibility to appointment in a Civil Service position for a period of ten years, however, presents a question of law to which we now address ourselves.
Article I, Section 11 of the Constitution of Louisiana provides as follows:
"No person shall be compelled to give evidence against himself in a criminal case or in any proceeding that may subject him to criminal prosecution, except as otherwise provided in this Constitution. No person under arrest shall be subjected to any treatment designed by effect on body or mind to compel confession of crime; nor shall any confession be used against any person accused of crime unless freely and voluntarily made." (Emphasis added.)
It is otherwise provided in the Constitution with respect to Civil Service employees in Article XIV, Section 15(P) (1), as follows:
"If any member of the State or City Commissions or any officer or employee in the State or City Civil Service shall willfully refuse or fail to appear before any Civil Service Commission, court, or judge, any legislative *733 committee, or any officer, board or body authorized to conduct any hearing or inquiry, or having appeared shall refuse to testify or answer any question relating to the affairs or government of the State or city, or the conduct of any State or city officer or employee on the ground that his testimony or answers would tend to incriminate him, or shall refuse to waive immunity from prosecution on account of any matter about which he may be asked to testify at any such hearing or inquiry, he shall forfeit his office or position and shall not be eligible thereafter for appointment to any position in the State or City Service for a period of ten years."
Appellant contends, and with obvious merit, that his testimony before the Commission on the charges against him, being in part the same as those for which he was under indictment, might tend to incriminate him when called for trial in the Criminal District Court. At the same time he points out that should he avail himself of the immunity granted by the State and Federal Constitutions against self-incrimination he automatically subjects himself to the penalty of ten years disqualification as provided in LSA-Constitution Article XIV, Section 15(P) (1). He therefore contends that the imposition of the penalty of disqualification for having exercised his constitutional right against self-incrimination by declining to testify is unconstitutional in that it deprives him of due process and the equal protection of the laws of the State and the United States as guaranteed by the Fourteenth Amendment to the Constitution of the United States. He cites as authority for his contention Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed. 2d 653 (1964); and State v. Kimberlin, 246 La. 441, 165 So.2d 279 (1964).
The ruling of the Supreme Court in the Kimberlin case does not apply to the factual situation in this case. In that case Kimberlin, a Civil Service employee, was called and did testify before the Civil Service Commission in a public hearing being conducted by the Commission, touching upon certain alleged violations involving himself and other persons. Sometime after the investigation was concluded, a transcript of the testimony taken at the Commission hearing was presented to, and considered by, the Grand Jury which in due course found an indictment against Kimberlin charging him with a serious criminal offense. A motion to quash was sustained by the trial court and affirmed by the Supreme Court. Kimberlin argued that his testimony was given without benefit of counsel and without having been fully advised of his constitutional rights against self-incrimination. In opposition, the State took the position that he had waived his privilege against self-incrimination by answering the questions propounded. The point was made that Kimberlin was a well educated man and fully aware of his rights as evidenced by his refusal to answer certain specific questions. The Court found that he had never been told specifically by any member of the Commission that he could refrain from answering questions which might tend to incriminate him and that he had not waived his privilege and citing State v. Harrell[2] and State v. Jemison[3], held that the use or consideration by the Grand Jury of his testimony so given, was violative of his constitutional rights.
In considering whether or not Kimberlin was compelled to give incriminating testimony, the Court found that certain instructions given to him by the Commission amounted to a threat of contempt proceedings in event of refusal. The Court further held that the provision in Article XIV, Section 15(P) (1) of the Constitution of Louisiana relative to forfeiture of office and disqualification for ten years was a compelling reason for his appearance and *734 testimony before the Commission. Hence the testimony given under these circumstances was not free and voluntary; and the indictment, even partially based on such evidence, was invalid.
The situation in the instant case is quite different from that in the Kimberlin case. Here the appellant did not testify. Had he done so under the threat of imposition of the penalty provided in Article XIV, Section 15(P) (1), the Kimberlin case might conceivably have been used to his advantage in a subsequent trial on the criminal charges against him. We do not think it is relevant to the question before us.
Fallon v. New Orleans Police Department, 238 La. 531, 115 So.2d 844, presented an almost identical question and would seem to settle conclusively the question presented here except for the later decision of the United States Supreme Court in Malloy v. Hogan, supra (June 15, 1964). In the Fallon case the Supreme Court of Louisiana, citing State v. Ford, 233 La. 992, 99 So.2d 320, held "that the Due Process Clause of the Fourteenth Amendment to the Federal Constitution does not extend its provisions to the Fifth Amendment in a state court." The Malloy case holds that it does. Hence, a further consideration of that case is necessary.
The Constitution of the State of Louisiana in Article I, Section 11, above quoted, corresponds with the Fifth Amendment of the United States Constitution insofar as compulsory self-incrimination is concerned, except that it is qualified by the phrase "except as otherwise provided in this Constitution." As above pointed out it is "otherwise provided" in Article XIV, Section 15(P) (1), that Civil Service employees are subjected to the penalty of forfeiture of office and disqualification for Civil Service appointment for ten years for refusal to give testimony on the ground that his "answers would tend to incriminate him." The question is then squarely presented: Is Article XIV, Section 15(P) (1), an abridgment by the State of Louisiana of the right of Sergeant Callahan to invoke the Fifth Amendment against self-incrimination as guaranteed and protected by the Fourteenth Amendment of the Constitution of the United States within the meaning of Malloy v. Hogan, supra? In the Fallon case the Supreme Court of Louisiana specifically held it did not, but this was before the Malloy case.
Malloy v. Hogan, supra, involved the following factual situation: The petitioner was ordered to testify before a referee appointed by the court in the State of Connecticut in an inquiry into alleged gambling and other criminal activities. More than a year prior thereto he had been sentenced for a gambling violation on a plea of guilty. He refused to answer any questions "on the grounds it may tend to incriminate me." He was thereupon adjudged in contempt for his refusal and committed to prison. He applied for a writ of habeas corpus, which was denied by the State Courts of Connecticut, whereupon he applied to the United States Supreme Court and certiorari was granted. The Court held as we have above indicated.
The Court reviewed many landmark cases to emphasize its departure from contrary views expressed in similar earlier cases and said:
"* * * Since the Fourteenth Amendment prohibits the States from inducing a person to confess through `sympathy falsely aroused,' Spano v. [People of State of] New York, supra, 360 U.S. [315] at p. 323, 79 S.Ct. [1202] at p. 1207 [3 L.Ed.2d 1265], or other like inducement far short of `compulsion by torture,' Haynes v. [State of] Washington, supra,[4]it follows a fortiori that it also forbids the States to resort to imprisonment, as here, to compel him to answer questions that might incriminate him. The *735 Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty, as held in Twining,[5]for such silence." (Emphasis added.) Malloy v. Hogan, 84 S.Ct. 1489 (1964).
Appellant Callahan was confronted with two alternatives: one, to testify and run the risk of self-incrimination in his pending criminal trial, and the other not to testify and be disqualified for Civil Service appointment for ten years. It hardly could be said that testimony given under these conditions would be voluntary and in the unfettered exercise of his free will. Therefore, assuming arguendo that LSA-Constitution Article XIV, Section 15(P) (1), is an abridgment by the State of Louisiana of the right of Sergeant Callahan to invoke the Fifth Amendment, this would not necessarily render it unconstitutional. It is only when such abridgment is without due process of law and in violation of the Fourteenth Amendment that such acts are unconstitutional. This is in perfect harmony with the opinion in Malloy v. Hogan, supra.
In Slochower v. Board of Higher Ed. of City of N. Y., 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956), the Supreme Court of the United States ordered reinstatement of a city employee (a professor at Brooklyn College, an institution maintained by the City of New York) on the ground that his discharge for refusal to testify before a congressional committee was violative of due process of law. The section of the New York City Charter under which Slochower was discharged and LSA-Constitution Article XIV, Section 15(P) (1), use almost identical language. For this reason the decision in that case is particularly significant.
Slochower invoked the Fifth Amendment and refused to testify before a United States Senate Committee, claiming immunity against self-incrimination. Thereupon he was summarily dismissed from his position as associate professor. The section of the New York City Charter, under the authority of which he was discharged, provides for termination of office or employment and ineligibility for future election, appointment, or employment by the city or any agency of the city of any employee who refuses to testify on the ground that he might incriminate himself. We think there is a clear distinction between that case and the instant one. The Court there said: "At the outset we must condemn the practice of imputing a sinister meaning to the exercise of a person's constitutional right under the Fifth Amendment." And further the Court said: "In Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497 [100 L.Ed. 511], we scored the assumption that those who claim this privilege are either criminals or perjurers." The point should be made clear, appellant Callahan was not disqualified from State Civil Service employment under any assumption or implication of guilt of charges against him as a result of his having invoked the Fifth Amendment. Mr. Callahan's disqualification is rather, however, based upon his refusal to testify before the City Civil Service Commission, the very act of which directly bears upon his fitness and suitability for public service. This is precisely the point of distinction made by the Court in Nelson v. County of Los Angeles, 362 U.S. 1, 80 S.Ct. 527, 4 L.Ed.2d 494 (1960), wherein the Court said:
"We, therefore, reach Globe's contention that his summary discharge was nevertheless arbitrary and unreasonable. In this regard he places his reliance on Slochower v. Board of Higher *736 Education, 1956, 350 U.S. 551, 76 S. Ct. 637, 100 L.Ed. 692. However, the New York statute under which Slochower was discharged specifically operated `to discharge every city employee who invokes the Fifth Amendment. In practical effect the questions asked are taken as confessed and made the basis of the discharge.' Id., 350 U.S. at page 558, 76 S.Ct. at page 641. This `built-in' inference of guilt, derived solely from a Fifth Amendment claim, we held to be arbitrary and unreasonable. But the test here, rather than being the invocation of any constitutional privilege, is the failure of the employee to answer. California has not predicated discharge on any `built-in' inference of guilt in its statute, but solely on employee insubordination for failure to give information which we have held that the State has a legitimate interest in securing. See Garner v. Board of Public Works of City of Los Angeles, 1951, 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317; Adler v. Board of Education, 1952, 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517. Moreover it must be remembered that hereunlike Slochowerthe Board had specifically ordered its employees to appear and answer."
With respect to the added distinction in the last above-quoted sentence, the Court had said in the Slochower case:
"It is one thing for the city authorities themselves to inquire into Slochower's fitness, but quite another for his discharge to be based entirely on events occurring before a federal committee whose inquiry was announced as not directed at `the property, affairs, or government of the city, or * * * official conduct of city employees.' In this respect the present case differs materially from Garner, where the city was attempting to elicit information necessary to determine the qualifications of its employees. * * *"
Obviously whatever significance this last distinction had, is even more pertinent in the instant case where the appellant appeared before the Civil Service Commission having control of his appointment upon his own application for the hearing to inquire into his fitness and suitability for public service. The right of the city to discharge an employee under these circumstances was upheld in Garner v. Board of Public Works, 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317 (1951).
The limit of application of due process in matters involving public interest is well stated in the section on Constitutional Law in American Jurisprudence 2d, Volume 16, page 578, as follows:
"The balance between police powers and due process is more or less in a state of unstable equilibrium, changing with sociological and economic development. On the one hand, the general rule is firmly settled that the provisions of the Fourteenth Amendment prohibiting any state from depriving any person of life, liberty, or property without due process of law do not operate as a limitation upon the police power of the state to pass and enforce such laws as will inure to the health, morals, and general welfare of the people. The state is not deprived of the power to enact regulations reasonable in character, and a statute or ordinance which is a valid exercise of the police power does not violate the due process clauses of the state and federal constitutions. Indeed, regulation under a proper exercise of the police power is due process, even though a property in whole or in part is taken or destroyed or burdens and expenses of various types are imposed. Thus, the due process provisions of the amendment and similar clauses in the state constitutions do not prevent legislation intended to regulate useful occupations which, because *737 of their nature or location, may prove injurious or offensive to the public. Such provisions are not to be construed so as to put the state and federal governments into a strait jacket and prevent them from adapting life to the continuous change in social and economic conditions. * * *
"On the other hand, the United States Supreme Court has pointed out that the Fourteenth Amendment requires that governmental regulation shall be accomplished by methods consistent with due process, and that the due process clause is a limitation upon an improper exercise of the police power by the states in that it prevents an arbitrary or unreasonable exercise of the power through laws or regulations.
"* * * A law which assumes to be a police regulation, but deprives the citizen of the use of his property under the pretense of preserving the public health, safety, comfort, or welfare when it is manifest that such is not the real object and purpose of the regulation will be set aside as a clear and direct invasion of the right of property without any compensating advantages. The courts will, however, be slow to strike down as unconstitutional legislation of the states enacted under the police power."
The paramount interest of the public in the area of law enforcement is so obvious that further comment seems unnecessary. A police officer who refuses to cooperate with the proper authority of the city by which he is employed; who refuses to give information within his knowledge; or who impedes or hinders the inquiry by the proper authorities into violations of the law which he has sworn to uphold and defend, is no longer of any value to the city as a police officer. Any law which declares and renders such officer disqualified from continuation in public service is within the limits of the reasonable exercise of the police power of the State and not violative of due process. State v. Southwestern Electric Power Company, 127 So.2d 309 (La.App.2d Cir. 1961), pp. 315-316.
Sergeant Callahan has no inalienable right to employment as a police officer; hence the paramount right of the people of the City of New Orleans to protection against law violation far transcends any right Callahan has to employment in a position, for which, by his actions, he has demonstrated his unfitness and disqualification. These relative rights are discussed in Louisiana Law Review, Volume XX, page 743. See page 746 from which we quote as follows:
"A state decision has affirmed the discharge of policemen who refused to testify as to their involvement in corrupt police activities, based on a policeman's duty to report candidly all knowledge of crime. These decisions have characterized public employment as a privilege giving rise to a correlative duty of candor and frankness as to matters affecting employment, with the result that the privilege against self-incrimination is asserted at the expense of the employment."
Applying the foregoing standards we find LSA-Constitution Article XIV, Section 15(P) (1) to be within the rule of reasonable exercise of the police power of the State and within the limits of due process.
The ruling of the Civil Service Commission appealed from is affirmed at appellant's cost.
Affirmed.
NOTES
[1] The appellate jurisdiction is now vested in the Courts of Appeal, LSA-Const. Art. 7, § 10 and § 29, as amended. Hughes v. Department of Police, La. App., 131 So.2d 99.
[2] 228 La. 434, 82 So.2d 701.
[3] 240 La. 787, 125 So.2d 363.
[4] 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513.
[5] Twining v. New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97.