223 So.2d 905 (1969)
George J. ROUX
v.
NEW ORLEANS POLICE DEPARTMENT.
No. 3482.
Court of Appeal of Louisiana, Fourth Circuit.
June 2, 1969.
Rehearing Denied July 7, 1969.
*906 William F. Wessel, F. Joseph Drolla, Jr., New Orleans, for appellant.
Alvin J. Liska, Maurice B. Friedman, New Orleans, for appellees.
Before REGAN, BARNETTE and GARDINER.
GARDINER, Judge.
Plaintiff-appellant, George J. Roux, was suspended and later, on April 23, 1968, dismissed from his job as a patrolman with civil service status in the New Orleans Police Department. From a ruling of the Civil Service Commission holding that his appeal from the suspension was not timely filed but affirming his dismissal from the police department, appellant appealed.
Appellant was notified of his dismissal by letter from the Superintendent of Police in which he set forth in detail the circumstances leading to his order that appellant submit to a polygraph examination which he refused to undergo, and the superintendent's conclusion that such refusal amounted to misconduct connected with his work. We quote the letter herewith in extenso:

"April 23, 1968
"Patrolman George J. Roux Badge #1336Payroll #3163 4407 Plum Orchard Drive New Orleans, Louisiana 70127
"Dear Patrolman Roux:
"Monday, February 26, 1968, shortly after the homicide investigation relating to Miss Susan Goldman was initiated, it was learned that Miss Goldman was acquainted with a number of police officers, most of whom were assigned to the First and Eighth Districts.
"As it was entirely possible that several of the police officers who had been acquainted with Miss Goldman were in possession of important information relating to the homicide investigation, and additionally, may not have been aware of the importance of such information, I instructed Captain Henry Morris, Chief of Detectives, to question officers assigned to the First and Eighth Districts for the purpose of collecting any and all information known to these officers regarding Miss Goldman.
"In order to insure the integrity of the Police Department, I further instructed Captain Morris to have those officers questioned verify their statements through polygraph examination, an investigative procedure normally followed in such investigations.
"As police officers occupy a position of public trust, and as it is a police officer's sworn duty to uphold the law and assist in exposing criminal misconduct, it was anticipated that all officers called upon to cooperate in this investigation would do so on an entirely voluntary basis.
"In the event any officer failed to cooperate fully with investigators by refusing to voluntarily make a statement or by refusing to voluntarily verify their statement through polygraph examination, I instructed Captain Morris to order either or both *907 actions on the part of the uncooperative officer. While this is the first occasion in which polygraph examinations were to be ordered during my tenure as Police Superintendent, the seriousness of the matter under investigation, namely, murder, and the known association of many police officers with Miss Goldman prior to her death, these facts required much determined action if the integrity of the Police Department was to be preserved.
"March 6, 1968, at about 4:00 P.M., you were called upon to cooperate with investigating officers as heretofore indicated. At this time you did answer questions, however, when asked by Captain Morris to voluntarily submit to a polygraph examination, being further advised of the investigative need for such cooperation, you refused. This refusal to cooperate during an official investigation reflected discredit upon you as a police officer and constituted violation of Articles 27 and 59 of the `Rules for the Administration of the Department of Police,' which read as follows:
"Article 27. Standards of ethics
`A member shall always conduct himself in accordance with the highest degree of morality which is required of the law enforcement profession.
`He shall act in a manner which will not reflect discredit upon himself or the Department.'
"Article 59. Cooperation
'A member shall promptly and sincerely cooperate with other members in the performance of their duty and with all persons in carrying out the provisions of this Title.'
"In view of this you were ordered by Captain Morris to verify your statement, made in connection with the official homicide investigation relative to Miss Goldman, through polygraph examination and you refused. Such refusal reflected discredit upon you as a police officer and constituted, in total, violation of Article 27 of the `Rules for the Administration of the Department of Police,' heretofore quoted, and Article 54 of these same rules, which reads as follows:
"Article 54, Instructions from proper authority
`A member shall promptly and fully abide by or execute instructions issuing from any authoritative source.
`If the instructions are reasonably believed to conflict with these Rules or other instructions this fact shall respectfully be made known to the issuing authority. If the issuing authority elects to insist upon the execution of the instructions then only he shall be held responsible should such conflict materialize.
`However, no instructions shall be issued or executed which are violative of any law.'
"Upon refusing to comply with Captain Morris' direct order you were suspended from the Police Department at about 4:20 P.M., March 6, 1968.
"March 21, 1968, you reported to Captain Joseph H. Murry, as instructed, and were counselled and questioned regarding your refusal to voluntarily submit to polygraph examination, and also your refusal to comply with Captain Morris' order directing you to submit to such examination. At this time, the position of the Police Department was outlined, however, you remained steadfast in your position. During the statement made by you on this occasion, you indicated that you felt you had a constitutional and civil right to refuse to take a polygraph examination and that Captain Morris did not have the authority to order you to take such a test.
"March 27, 1968, you reported to my office, as instructed, along with three other officers who had taken identical positions. At your request, your attorney, Mr. Sanford Krasnoff, was present at this meeting. As the meeting progressed, I asked you if you would cooperate in the investigation *908 by voluntarily taking a polygraph examination. You indicated that you would not. I then advised you that I was ordering you to take a polygraph examination and asked you if you would obey this order. You again indicated that you would not. These refusals constituted violations of Articles 27, 54 and 59 of the `Rules for the Administration of the Department of Police,' heretofore quoted.
"As a result of the heretofore outlined misconduct, I am dismissing you from the Police Department, such dismissal effective immediately.
 Yours very truly,
 /s/ JOSEPH I. GIARRUSSO
 JOSEPH I. GIARRUSSO
JIG:mes Superintendent of Police"
The case was heard before the Civil Service Commission on May 24, 1968, both appellant and the appointing authority being represented by counsel at the hearing. In sustaining the appellant's dismissal from the police department by the Superintendent, the Commission found that there was uncontradicted testimony that "at no time was Roux asked or ordered to waive immunity from prosecution"; that Roux was informed that he was not a suspect to any crime, nor was he charged with any crime, arrested for nor threatened with charges, and that he was not threatened with dismissal if the results of the polygraph tests were adverse to him.
The appeal in this matter lies to this appellate court as a result of Article VII, Sections 10 and 29, as amended, and the jurisprudence of the state. The appellate jurisdiction of this court is limited by Article 14, Section 15(0)(1) of the Constitution of Louisiana which provides that the decision of the Civil Service Commission shall be final on the facts, but an appeal shall be granted on any question of law. The question which we must determine and upon which appellant bases his appeal is a constitutional one.
In the ruling of the Commission here it was found that on March 27, 1968, appellant was instructed to report to the office of the superintendent of police where, in the presence of his legal counsel, appellant refused the superintendent's request that he voluntarily submit to the polygraph test; that appellant was again cited Article XIV, Section 15 (P)(1) of the Louisiana Constitution of 1921, denying members of the classified service the privilege of retaining their classified position while choosing to remain silent when questioned about municipal affairs or conduct of municipal employees; that appellant and his counsel were also offered the opportunity to review and agree which questions would be included in the proposed polygraph test, all to no avail, and that upon being given a direct order to take a polygraph test, appellant refused and his dismissal became effective at that time because of his refusal to obey a direct order of the superintendent and his failure to cooperate in the intradepartmental investigation.
Article XIV, Section 15(P)(1) of the Louisiana Constitution relating to the rights and obligations of Civil Service employees provides:
"If any member of the State or City Commissions or any officer or employee in the State or City Civil Service shall willfully refuse or fail to appear before any Civil Service Commission, court, or judge, any legislative committee, or any officer, board or body authorized to conduct any hearing or inquiry, or having appeared shall refuse to testify or answer any question relating to the affairs or government of the State or city, or the conduct of any State or city officer or employee on the ground that his testimony or answers would tend to incriminate him, or shall refuse to waive immunity from prosecution on account of any matter about which he may be asked to testify at any such hearing or inquiry, he shall forfeit his office' or position * * *"
Appellant argues that the article of the Constitution merely requires Roux "* * * to testify or answer any questions relating *909 to the affairs or government * * * or [his] conduct, * * *" and nothing more. He contends that the Constitution does not vest in the appointing authority the power to order him or any employee to submit to a polygraph examination and that if he is so authorized, such a requirement is unlawful and serves to deny Roux due process of law guaranteed by both the Federal and State Constitutions and is unconstitutional. In support of his argument that the acts of the appointing authority denied him the privilege against self-incrimination, counsel cite Uniformed Sanitation Men Assoc. v. Commission, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968) and Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968) and assert that these decisions are controlling in this case.
In the Uniform Sanitation Men's case, supra, employees of the department were dismissed after they invoked the Fifth Amendment of the Federal Constitution and refused to testify in an investigation being conducted by the Commissioner into alleged corrupt practices in the department. These employees were informed that whatever they said would be held against them. Three of the appellants answered the questions but when called before the Grand Jury they invoked the silence of the Fifth Amendment, and for that reason were dismissed from their employment after having been instructed to sign waivers of immunity from subsequent prosecution. In the Gardner case, supra, a New York City policeman was called before the Grand Jury investigating gambling activities and ordered to sign a waiver of immunity from prosecution and then answer all questions which he refused to do. He was dismissed solely for refusing to waive his constitutional privilege against self-incrimination. In both cases the Supreme Court held that the employee's constitutional guarantees had been violated. However, the Court specifically recognized and upheld the right of an appointing authority to discharge municipal employees for refusal to account for "their performance of their public trust, after proper proceedings, which do not involve an attempt to coerce them to relinquish their constitutional rights."
In this case in which Roux before the Commission laid much stress on the fact that he believed himself to be a suspect in the homicide investigation, the Commission found that this position was inconsistent with the evidence inasmuch as appellant was at no time asked to waive immunity. This Court in Callahan v. New Orleans Police Department, La.App., 171 So.2d 730, pointed out that the police officer in that case was charged with a crime in the criminal court and his case was pending for trial, but that he was not disqualified from state civil service employment under any assumption or implication of guilt of charges against him as a result of his having invoked the Fifth Amendment. He was discharged because he refused to testify before the Commission. In holding that Article XIV, Section 15(P)(1) of the Constitution was within the rule of reasonable exercise of the police power of the State and within the limits of due process, the Court said:
"* * * A police officer who refuses to cooperate with the proper authority of the city by which he is employed; who refuses to give information within his knowledge; or who impedes or hinders the inquiry by the proper authorities into violations of the law which he has sworn to uphold and defend, is no longer of any value to the city as a police officer. Any law which declares and renders such officer disqualified from continuation in public service is within the limits of the reasonable exercise of the police power of the State and not violative of due process. State [through Department of Highways] v. Southwestern Electric Power Company, 127 So.2d 309 (La.App. 2d Cir. 1961), pp. 315-316."
Appellant insists, and this is shown by the record to be true, that he cooperated in the investigation to the extent of answering all questions, giving several written statements, and voluntarily submitting to *910 physical examinations. However, when asked to answer questions in a polygraph test for the "expressly explained purpose of attempted verification of earlier statements" he refused because, first, to his knowledge "the polygraph test was not an accurate device and that its results were inadmissible as valid evidence in a court of law; second, that due to its inaccuracy, appellant feared the results of the test would jeopardize his reputation and career; third, that he was in a dilemma having to choose between taking and perhaps failing the test which might result in charges being brought against him, or refusing to take the test and being suspended or dismissed because of his refusal; fourth, that he had a constitutional right to refuse to take a polygraph test and that the Police Manual with respect to the rights of an arrestee provided that no citizen could be compelled to take the test; and, finally, that his superiors had no cause or reason to doubt his veracity and ask that he submit to the test for the purpose of verifying his prior statements."
As we said in the Callahan case, the police officer has no inalienable right to employment as a police officer; "* * * the paramount right of the people of the City of New Orleans to protection against law violation far transcends any right Callahan has to employment in a position, for which, by his actions, he has demonstrated his unfitness and disqualification. * * * It is our conclusion that Roux's refusal to submit to the polygraph test, thereby impeding and hindering the inquiry into violations of the law which he was sworn to uphold and defend was an act of misconduct on his part as a result of which he could no longer be said to possess the high standards of conduct required of a policeman. The order was reasonable and within the limits of due process.
As to the question of whether the order to submit to the test was a reasonable order, the Commission found the appointing authority proved that it did not exceed its authority and that it acted reasonably under all of the circumstances of the case, and that the burden to show otherwise was not carried by appellant. The Commission said:
"The circumstances of the case required an interview of and scrutiny of the activities of numerous officers, the urgency thereof being emphasized to ensure against departmental scandal as well as to investigate and quickly solve an apparent homicide. After appellant's suspension and continued refusal to obey an order, the thrust of the appointing authority's position shifted from concern over the use of the polygraph test as an investigatory aid to concern over the appellant's refusal to obey a direct order of a superior officer."
Counsel for appellant have referred to three cases in other jurisdictions in which dismissals were not allowed upon refusal to take polygraph tests, and appellee has cited three cases in which the polygraph test was refused by policemen and their dismissal for such refusal was upheld. While the jurisprudence of other states is persuasive, as has been said often by the courts of this state, it is not controlling.
In Molino v. Board of Pub. Safe, of City of Torrington, 154 Conn. 368, 225 A.2d 805, cited by appellant, the Supreme Court of Connecticut, in 1966, held that a policeman had not been dismissed for cause. There three police officers were discovered early in the morning hours, two inside a building, and one sitting in an automobile on the premises. The officers were required to report the incident but failed to do so. It was called to the attention of the Chief of Police by the owner of the building and an investigation was started. The officers contended that they were checking the building, and they were not charged with any act of criminal activity, nor were they charged with an act of insubordination or with any immoral or antisocial conduct. The Board of Public Safety directed the chief of police to ask the officers *911 to submit to a polygraph test and he then notified them that they must take the test or be suspended.
Upon their refusal to take the test, they were suspended "for refusal to cooperate in an investigation." The attorney for the plaintiffs asked for the reasons for their suspension and in a letter to him the chief of police listed several charges of violation of sections of the police manual. The Board had authority to suspend, expel and remove any member of the police department only for cause. The question was whether the cause assigned constituted, of itself, ground for removal, which the Court said is a judicial question, and it decided the question of whether the Board acted arbitrarily, illegally or so unreasonably as to abuse its wide discretion and said that that burden rested upon the plaintiffs. One of the charges was the violation of the section of the regulations of the police manual by refusing to take a polygraph. But the Court said that that section only required that a policeman be truthful and, therefore, in the absence of any evidence, and as no one claimed that the policemen were untruthful in statements given by them, and also due to the unreliability of the polygraph test as proof of truthfulness, the refusal was not a violation of the section. The Court concluded that all the "charges assigned could not, on the evidence before the Board, constitute grounds for dismissing the plaintiffs."
The Court, in the Molino case, supra, considered the case of DeVito and Stape v. Civil Service Commission, 404 Pa. 354, 172 A.2d 161, cited by appellant holding that the refusal was not just cause for dismissal. The three cases cited by appellee, in which orders to take polygraph tests by police officers were sustained, McCain v. Sheridan, 160 Cal.App.2d 174, 324 P.2d 923, and Frazee v. Civil Service Board of Oakland, 170 Cal.App.2d 333, 338 P.2d 943, Fichera v. State Personnel Board, 217 Cal. App.2d 613, 32 Cal.Rptr. 159, were referred to by the Court and it stated that in the two first named cases the officers were implicated in a crime and their dismissals were upheld because of refusal to take the test; and that in the Fichera case the dismissal was approved although there was no accusation of crime.
We are guided to a great extent in our holding in the present case by what the Court said in the Fichera case, and we say also that there may be many circumstances wherein a superior's order that a subordinate officer submit to a polygraph test would be unreasonable. We quote as follows from that case:
"The polygraph is an extension of the age-old process of assessing the veracity of a witness, by scrutinizing his facial expression, rubescence, tremors, evasion of meeting the eye, and the like. It works through externals and is quite distinct from drug induced revelation, hypnosis, or any other form of narco-analysis. In the limited field of cases such as this one, and those of the prior cases cited above, we find no deprivation of constitutional or legal rights.
"It may be conceded that there is a considerable degree of fallibility with the polygraph (see Sholnick, Scientific Theory and Scientific Evidence: An Analysis of Lie-Detection, 70 Yale L.J. 694). It is not considered to have enough reliability to justify the admission of expert testimony in the courts based on its results, and a person's willingness or unwillingness to take the test is without enough probative value to justify its admission. (People v. Carter, 48 Cal.2d 737, 752, 312 P.2d 665.) It was recognized in the Frazee case, however, that it does not follow that the tests are completely without value. (170 Cal.App.2d at p. 335, 338 P.2d at pp. 944-945). The test might have proved useful in limiting and channeling the investigation in this case, in which three officers besides appellants were directed to take the tests, and acceded. It might have been an instrument of exculpation and vindication, on the one hand, or of more intensive *912 investigation of the subjects of the test, on the other. We cannot, of course, tell what would have been the ruling of the State Personnel Board, or what our own ruling might have been, had the tests been taken and had produced results considered damaging by appellants' superiors. We do hold, however, that appellants were not entitled to withhold this means of investigation and at the same time retain their positions as officers of the California State Police."
While appellant's refusal to obey the order is not evidence of guilt or of knowledge of the identity of the guilty party, he may not be permitted to refuse to take the polygraph test in view of his sworn duty to cooperate in the investigation of crime. Under all the circumstances in this matter, we find that the order was reasonable.
For the above and foregoing reasons, the decree of the Civil Service Commission maintaining the dismissal of appellant from the New Orleans Police Department is hereby affirmed. Costs are to be paid by appellant.
Affirmed.