236 So.2d 548 (1970)
Clinton Grady CLAYTON, Harold Watkins LeJeune, Jr. and Francis Joseph Blanchard
v.
NEW ORLEANS POLICE DEPARTMENT.
No. 3728.
Court of Appeal of Louisiana, Fourth Circuit.
June 1, 1970.
Rehearing Denied July 6, 1970.
*549 Plotkin, Sapir & Bradley, Steven R. Plotkin and Shirley Ann Basile, New Orleans, for plaintiffs-appellants.
Alvin J. Liska, City Atty., and Maurice B. Friedman, Asst. City Atty., for defendant-appellee.
Before SAMUEL, REDMANN and BARNETTE, JJ.
SAMUEL, Judge.
Appellants, patrolmen with Civil Service status in the New Orleans Police Department, were suspended and later dismissed from their positions for refusal to submit to a polygraph test in an intra-departmental investigation. They have taken these appeals from a decree of the City Civil Service Commission dismissing their appeals to that authority. In this court they only seek reversal of the Commission decree upholding their dismissals.
During the latter part of February, 1968 the New Orleans Police Department was conducting a homicide investigation relative to a young woman whose body had been found in her apartment. The surrounding facts and circumstances indicated the decedent had been acquainted with unknown New Orleans policemen, assigned to the First and Eighth Districts, who may have possessed information helpful in the investigation. Accordingly, the Superintendent of Police ordered questioning of all policemen assigned to those two districts, together with the use of polygraph and other investigatory tests and devices when deemed advisable, by the Chief of the Detective Bureau in charge of the investigation.
Appellants and other policemen also assigned to the two districts were informed of the investigation and asked to cooperate with the investigating officers. They were further informed that, based on the contents of the decedent's diary and the statement of the last person known to have seen her alive, as she was expecting a visit from a policeman "boy friend" on the night of her death, they would be considered suspects of a possible crime. Appellants and numerous other police officers in the two districts were interrogated, signed written statements and submitted to examinations of their bodies and fingernail scrapings and to pubic hair tests. Many of them voluntarily submitted to polygraph tests to verify earlier written or oral statements. Although they cooperated in other ways, the appellants refused to submit to a polygraph test to verify their earlier statements when requested to do so by a superior officer acting under authority of the Superintendent of Police. They were suspended because of these refusals.
Repeated requests of appellants by superior officers to submit to a polygraph test also were refused. Subsequently, on advice of their legal counsel who were present, each appellant refused to take such a test when given a direct order to do so by the Superintendent of Police. As a result, each was dismissed from the force.
At no time were appellants ordered or requested to waive immunity from prosecution and they gave no such waiver. The dismissals were based on the conclusion that appellants' refusals to take a polygraph test were in violation of Articles 27, 54 and 59 of the "Rules for the Administration of the Department of Police". Those articles substantially provide: A police officer shall conduct himself in accordance *550 with a high degree of morality and act in a manner which will not reflect discredit upon himself or the Police Department; he shall promptly and fully abide by or execute instructions issuing from any authoritative source; and he shall promptly and sincerely cooperate with other police officers in the performance of their duty.
In this court appellants made the following contentions: (1) As suspects appellants come within the purview of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and therefore they were entitled to all of the constitutional safeguards provided by that decision without the penalty of loss of Civil Service status; (2) the Commission erred in failing to recognize that Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562, is applicable in the instant case; (3) the Commission erred in failing to recognize that Louisiana Constitution Article 14, § 15(P) (1) is unconstitutional by virtue of Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082, and Uniformed San. Men Ass'n. v. Com'r. of San., 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089; (4) the Commission erred in following the rationale of Roux v. New Orleans Police Department, La.App., 223 So.2d 905, because in the instant case the appellants were suspects of a crime whereas in Roux the officer was not a suspect; and (5) the Commission erred in failing to recognize that the dismissals in the instant case were without cause and therefore in violation of Article 14, § 15(N)(1) of the Louisiana Constitution. We do not agree with any of the contentions.
The first contention is made on the ground that the record does not reveal appellants were given full warning of their constitutional rights. We find Miranda v. Arizona, the basis for that contention, is not applicable here. Miranda and its consolidated cases were criminal prosecutions in which the court held that statements obtained from the defendants were inadmissible in evidence because of the absence, or undemonstrated use, of full warning of their constitutional rights given to the defendants prior to the time the statements were made. Thus Miranda was concerned only with the admissibility of evidence in a criminal prosecution.
As distinguished from Miranda, here we do not have a criminal prosecution; nor are we concerned with the admissibility in evidence of any statement made by the appellants. Only their dismissals from the police force are before us and those dismissals resulted solely from refusals to take a polygraph test when given a direct order to do so by the Superintendent of Police, a refusal made on advice of their legal counsel who were present at that time. We have been cited to no authority, and know of none, which under these circumstances required that a full warning of constitutional rights must be given to persons then actively represented by legal counsel.
Nor is Garrity v. New Jersey, the case relied on in appellants' second contention, controlling here. In Garrity, also a criminal prosecution, the appellants were police officers who had been convicted of a crime. Confessions given by the appellants in connection with a prior investigation were sought to be used against them in the prosecutions. The court held the confessions were not voluntary, but were coerced, because during the investigation the officers were given the choice either to incriminate themselves or to forfeit their positions as a result of a refusal to testify on the ground of self-incrimination, and the same therefore were inadmissible in the criminal prosecution. Again, although the opinion does contain some dicta relative to discharge from office, the question before the court was the admissibility of the confessions as evidence in a criminal prosecution. The court has passed on questions of dismissal in more recent cases, particularly Gardner v. Broderick, and Uniformed San. Men Ass'n. v. Com'r. of San., which appellants also have cited and *551 which we now proceed to discuss in our consideration of their third contention.
Louisiana Constitution Article 14, § 15(P) (1), which appellants seek to have us recognize as unconstitutional by virtue of Gardner and Uniformed San. Men Ass'n., reads as follows:
"If any member of the State or City Commissions or any officer or employee in the State or City Civil Service shall willfully refuse or fail to appear before any Civil Service Commission, court, or judge, any legislative committee, or any officer, board or body authorized to conduct any hearing or inquiry, or having appeared shall refuse to testify or answer any question relating to the affairs or government of the State or city, or the conduct of any State or city officer or employee on the ground that his testimony or answers would tend to incriminate him, or shall refuse to waive immunity from prosecution on account of any matter about which he may be asked to testify at any such hearing or inquiry, he shall forfeit his office or position and shall not be eligible thereafter for appointment to any position in the State or City Service for a period of ten years." LSA-Const. Art. 14, § 15(P) (1). In Gardner and Uniformed San. Men Ass'n., respectively, the appellants were discharged pursuant to pertinent provisions of the New York Constitution and New York City Charter similar to the above quoted Louisiana constitutional provision. Gardner, a policeman, was discharged because he refused to waive his privilege against self-incrimination, and refused to sign a waiver of immunity from prosecution, when called as a witness before a grand jury investigating alleged bribery and corruption of police officers. The appellants in Uniformed San. Men Ass'n., employees of a city sanitation department, were discharged for refusal to sign waivers of immunity in connection with testifying before a grand jury, or for invoking their privilege against self-incrimination before a commissioner, investigating misuse of public property and funds. In both cases the court held the appellants had been wrongfully dismissed in violation of their constitutional rights. We note in both cases the court stated that had the appellants refused to answer questions specifically, directly and narrowly relating to the performance of their official duties, without requiring relinquishment of the benefits of constitutional privilege and without being required to waive immunity from prosecution, the privilege against self-incrimination would not constitute a bar to their dismissals for such refusals.
As distinguished from the two cases just discussed, in the instant matter appellants were not requested or ordered to waive immunity. They were dismissed, not under the above quoted provision of the Louisiana Constitution, but for violation of police department rules relative to acting in a proper manner so as to avoid reflecting discredit upon the department or the individual policemen, obeying orders from their police superiors, and cooperating with other police officers in the performance of their duty. The constitutional provision does no more than impose a penalty of ineligibility for appointment in the State or City Civil Service for a period of ten years for the acts therein described and in its decision the Commission specifically refused to and did not invoke the penalty.
Thus the Louisiana constitutional provision actually played no part in the dismissals of appellants. And to the extent that it may have deprived them of constitutional rights, particularly as to self-incrimination, the facts here come within the bounds under which, as stated in Gardner and Uniformed San. Men Ass'n., the same two cases upon which appellants rely, the privilege against self-incrimination does not constitute a bar to dismissal. The matter being investigated in the instant case specifically, directly and narrowly related to the performance of appellants' official duties and they were not required either to relinquish the benefits of constitutional privilege or to waive immunity from prosecution.
*552 Now, addressing ourselves to appellants' fourth contention, we find that the facts in Roux v. New Orleans Police Department are similar to those in the instant case, even to the extent that both involve the same homicide investigation. In Roux, as here, a New Orleans police officer was dismissed from the force because he refused to take a polygraph test to verify prior statements made by him in the intradepartmental investigation. Applications for writs were refused in Roux both by the Supreme Court of Louisiana (254 La. 815, 227 So.2d 148) and by the Supreme Court of the United States (397 U.S. 1008, 90 S. Ct. 1236, 25 L.Ed.2d 421 (1970)). We adhere to the views expressed in our opinion in Roux.
The sole difference between Roux and the instant case upon which appellants rely in an attempt to distinguish the two cases is that in Roux the dismissed police officer was informed he was not a suspect whereas here the appellants were informed they and other policemen were considered suspects of a possible crime. In our opinion the difference is immaterial. Certainly a civil service employee suspected of having committed a crime is not entitled to more consideration, relative to constitutional privilege or otherwise, than one of his fellow employees as to whom there are no grounds for such a suspicion.
In connection with their fifth contention appellants argue only that, on the basis of the decisions by the United States Supreme Court in the cases above discussed, their dismissals were without cause and therefore in violation of Article 14, Section 15(N) (1) of the Louisiana Constitution.
In pertinent part that provision of our Constitution simply states that no person who has acquired permanent Civil Service status in the State or Classified Service shall be dismissed except for cause. We hold that the appellants in this case were dismissed for cause as required by the provision. As we said in Roux, 223 So.2d at pages 910 and 912 of the opinion:
"* * * It is our conclusion that Roux's refusal to submit to the polygraph test, thereby impeding and hindering the inquiry into violations of the law which he was sworn to uphold and defend was an act of misconduct on his part as a result of which he could no longer be said to possess the high standards of conduct required of a policeman. The order was reasonable and within the limits of due process."
* * * * * *
"While appellant's refusal to obey the order is not evidence of guilt or of knowledge of the identity of the guilty party, he may not be permitted to refuse to take the polygraph test in view of his sworn duty to cooperate in the investigation of crime. Under all the circumstances in this matter, we find that the order was reasonable."
For the reasons assigned, the decree of the Civil Service Commission maintaining the dismissals of appellants from the New Orleans Police Department is affirmed.
Affirmed.