288 So.2d 410 (1973)
Robert Norman FREY
v.
DEPARTMENT OF POLICE.
No. 5755.
Court of Appeal of Louisiana, Fourth Circuit.
November 30, 1973.
Rehearing Denied February 6, 1974.
*411 Milton P. Masinter, New Orleans, for appellant.
Michael A. Starks, Asst. City Atty., for appellee.
Before GULOTTA, J., and GAUDIN and ZACCARIA, JJ. Pro Tem.
GAUDIN, Judge Pro Tem.
Appellant is New Orleans police sergeant Robert Norman Frey, who was suspended by the Superintendent of Police, Clarence B. Giarrusso. The New Orleans Civil Service Commission upheld the suspension and an appeal to this Court was taken.
The Commission held (1) that the Superintendent of Police had the right to order him (Frey) to submit to a series of polygraph tests as a condition of continued employment, and (2) that the Superintendent did not abuse his discretion when he denied him (Frey) a two-week delay before taking a fourth polygraph examination.
The facts, generally undisputed, are these:
Frey was arrested by agents of the Internal Revenue Service on June 30, 1971, for alleged violation of Federal statutes concerning the acceptance of bribes.
Later that day, he met with the Superintendent and it was decided that Frey would give a written statement and submit himself to the polygraph machine on July 1, 1971.
On July 1st, Frey did execute a written statement in which he denied any wrongdoing, but three polygraph tests were not conducted until the afternoon of July 2nd. The tests were inconclusive, due in part to medication Frey had taken that morning and because of his emotional, nervous condition.
Superintendent Giarrusso then directed Frey to undergo another polygraph test the following morning (July 3rd).
When Frey refused to report for the test, allegedly because he was physically and mentally exhausted, his employment was suspended.
The jurisprudence of this State unmistakably establishes the right of the Superintendent to order policemen to take polygraph tests. See Roux v. New Orleans Police Department, La.App., 223 So.2d 905; Clayton v. New Orleans Police Department, La.App., 236 So.2d 548; and Dieck v. Department of Police, La.App., 266 So.2d 500.
As unequivocally stated in Roux, no person has an inalienable right to employment as a police officer; and a refusal to submit to a polygraph test, thereby impeding and hindering an investigation into possible violations of the law which the officer was sworn to uphold and defend, was misconduct on his part, justifying disciplinary action.
*412 It is significant that Frey was informed prior to the initial polygraph test that he was the subject of an administrative inquiry into possible violations of police department regulations. He was not asked to waive any state or Federal constitutional rights and nothing he said during the test could have been used against him in a subsequent criminal proceeding. These salient realities distinguish the instant case from Garrity v. New Jersey, 383 U.S. 493, 87 S. Ct. 616, 17 L.Ed.2d 562; Gardner v. Broderick, 392 U.S. 280, 88 S.Ct. 1920, 20 L. Ed.2d 1082 and Uniformed Sanitation Men's Association v. Commissioner of Sanitation, 392 U.S. 280, 88 S.Ct. 1917, 20 L. Ed.2d 1089 decisions cited by appellant and heavily relied on by him.
At first glance, the line between Frey and the three Federal cases may appear thin but there is a clear, distinct difference.
Had Frey been summoned before a Grand Jury, as were the policemen in Garrity, had he been similarly asked to waive a constitutional guarantee or had he been compelled to answer questions not specifically or necessarily related to his official duties, he might well have been illegally suspended. For, as Justice William O. Douglas pointed out in Garrity, ". . . policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights."
However, the United States Supreme Court in the Uniform Sanitation Men's Association case, supra, specifically recognized and upheld the right of an appointing authority to discharge municipal employees for refusal to account ". . . for their performance of their public trust, after proper proceedings, which do not involve an attempt to coerce them to relinquish their constitutional rights."
Because Frey was the subject of an intradepartmental inquiry into his official conduct and because he was not asked to waive immunity or any other constitutional right, the rationale enunciated in Garrity and the several other Federal cases cannot apply.
We turn now to a consideration of Frey's second contention, that the Superintendent should have delayed the last polygraph test.
Before the Commission, Superintendent Giarrusso was asked about the necessity for an immediate investigation:
Question: "What was the reason, if you can divulge it, for this urgency?"
Answer: "Well, I think there are several reasons, one of which is that you cannot grant an investigative moratorium of two weeks to any suspect. Two, a citizen is not afforded the opportunity of a two-week moratorium to submit to a polygraph test. Three, there had been some very, very serious allegations of misconduct by the Federal Government against a member of the Police Department who was in a sensitive position. I believe that the Department should function and perform in the sunshine. At that time, the entire Department was under a cloud. It was necessary to pursue this investigation at that time rather than grant a delay which, in addition, would afford any suspectnot Sergeant Frey, but any suspectthe opportunity to conceal, distort and contaminate evidence . . ."
In its decision, the Commission said:
"It seems clear that appellant's position as a police officer, burdened with the additional distinguishing feature of his employment that he is a symbol of public trust and law enforcement who must remain above all suspicion which might tend to lessen this image and that of the entire police department, demanded an immediate corroboration of his statement denying any wrongdoing alleged in his Federal arrest. We believe this posture to be both proper and reasonable to expect. This Commission does not feel, therefore, that the Appointing Authority was unreasonable in ordering *413 the immediacy of the polygraph test."
We likewise agree with the Commission, that the Superintendent had ample cause to persist in his investigation and not delay the fourth test.
Because Frey claims that his guarantees under the Louisiana and United States constitutions were violated, we reviewed at length every facet of his appeal. We found no transgressions.
The Commission's decision is therefore affirmed.