[Civ. No. 17762.   First Dist., Div. Two.   May 7, 1958.]

ERNEST W. McCAIN, Appellant, v. JOHN SHERIDAN et al., Respondents.

Pelletreau, Gowen & Moses, William P. Moses and Robert H. Kroninger for Appellant.

Thomas M. Carlson, City Attorney (Richmond), Robert Collins, Assistant City Attorney, and John Ormasa for Respondents.

John W. Collier, City Attorney (Oakland), and Mark B. Shragge, Deputy City Attorney, as Amici Curiae on behalf of Respondents.

DRAPER, J.—Petitioner (termed "plaintiff" in his petition for writ of mandate) had been a police officer of the city of Richmond for 14 years, and in 1956 held the rank of sergeant. He was assigned to the records division of the department May 6, 1956. Among the duties of that division was the receipt of cash bail. On May 14 it developed that $263 cash bail, received May 5 and presumably placed in the cash drawer on that day, was missing. On May 18 a like amount was found to be missing. The $526 shortage was the subject of newspaper stories. Seventeen employees of the police department were assigned to the records division and had access to the cash drawer where bail money was kept. By petition to the police chief dated May 21, signed by all 17, these employees referred to the "adverse publicity," stated their belief "that we are all equally suspected of appropriating the missing funds," and concluded by "strongly urging that a full scale investigation, including the use of the latest scientific aids, be employed at once in an earnest effort to establish the innocence, or guilt, of each of the undersigned . . ."

Petitioner was the third signer of this document. Although he testified that he did not know what the petition was when he signed it, he conceded that on the same afternoon he signed, he presented the petition to the officer whose signature is the fifth upon the document, and told that officer that the petition was a request that the signers be given a lie detector test. Upon receipt of the petition, the chief arranged with an

expert, not connected with the department, for the giving of the test, and ordered that the signers take it. Petitioner reported for his first polygraph (lie detector) test June 11. A second test was ordered for petitioner and several others on June 16. In this test, the machine was set up, the necessary attachments to the person of petitioner were made, and he was told that seven cards, each bearing a number visible to him but not to the examiner, would be shown to him. He was to choose one card, and the machine would show whether his statement of the number he chose was correct. He was also told that some people are not sufficiently responsive for polygraph testing, and that if he proved to be one of these, further testing would not be effective. In fact, this ''test'' was a trick. The cards were so arranged that the examiner could tell, without observing the faces of the cards, what number had been chosen by petitioner. The intent was to find whether, in an attempt to evade further testing, petitioner would falsify the number he had in fact chosen. The examiner testified that petitioner did so falsify. When informed of this result, petitioner removed the equipment attached to his arm, and, when the examiner spoke of further testing, petitioner asked to leave, and refused to submit to any further test. Later, the police chief ordered petitioner to complete the polygraph test, and offered to arrange such a test by another examiner. Petitioner refused, and said he would have absolutely nothing more to do with a lie detector.

Petitioner was dismissed from the police department June 22, 1956. He appealed to the personnel board. After public hearing, the dismissal was sustained, and the city council sustained that action. By this proceeding, petitioner sought writ of mandamus requiring his reinstatement and payment of salary from date of his dismissal. The case was submitted to the trial court upon the transcript of the hearing before the personnel board. Writ was denied, and petitioner appeals.

The sole question presented is whether appellant's refusal to comply with the chief's order to complete the polygraph test constitutes ''insubordination, disobedience, . . . (or) conduct unbecoming a police officer.'' Refusal to carry out a valid order concededly would be ground for dismissal. Appellant, however, argues that the order to take the test was unreasonable and invalid because the results of the test could not be admissible in evidence for or against appellant.

Beyond question, the results of lie detector tests are inadmissible in evidence on the trial of a criminal case,

whether offered by the prosecution (*People* v. *Aragon*, 154 Cal.App.2d 646 [316 P.2d 370] ; *People* v. *Wochnick*, 98 Cal. App.2d 124 [217 P.2d 70] ), or the defense (*People* v. *Porter*, 99 Cal.App.2d 506, 510 [222 P.2d 151] ). Nor are such results admissible on trial of a civil case (*Gideon* v. *Gideon*, 153 Cal. App.2d 541, 546 [314 P.2d 1011] ). ██ Similarly, a suspect's willingness or unwillingness to take such a test is inadmissible at trial (*People* v. *Carter*, 48 Cal.2d 737, 752 [312 P.2d 665] ).

██ However, a member of the police force must be above suspicion of violation of the very laws he is sworn and empowered to enforce. The efficiency of our system of administration of justice depends, in large part, upon police officers' faithful discharge of the trust reposed in them. (*Christal* v. *Police Commission*, 33 Cal.App.2d 564, 567 [92 P.2d 416].) Neither their number nor their arms will long sustain them in upholding the law if only the ultimate sanction of force is available to them. Rather, they can perform their duties only if they merit the trust and confidence of the mass of law-abiding citizens. Whatever weakens that trust tends to destroy our system of law enforcement. Accordingly, the courts have long recognized that a policeman's tenure of office may be terminated for derelictions far less serious than violation of the criminal statutes governing citizens generally. He may be discharged for violation of a rule which requires prompt payment of his debts. (*Cleu* v. *Board of Police Commissioners*, 3 Cal.App. 174 [84 P. 672] ; see also *Irwin* v. *City of Los Angeles*, 3 Cal.App.2d 495 [39 P.2d 851].) Even exercise of the constitutional right against self-incrimination may constitute unofficerlike conduct and be ground for discharge. (*Christal* v. *Police Commission, supra*, 33 Cal.App. 2d 564.)

██ By his written request that the test be administered to him, appellant evinced desire to obtain whatever benefit such apparent willingness might yield in diverting the investigation to others. The order that he complete the test he had himself requested seems in no way an unreasonable departmental regulation. Such tests are recognized as having some value in investigation, even though they are not yet sufficiently reliable to be admitted in evidence. (*People* v. *Aragon, supra*, 154 Cal.App.2d 646, 658; 39 Cal.L.R. 439.) We do not suggest that appellant's refusal to obey the order is any evidence of guilt or of knowledge of the identity of the guilty party. We do hold that, in the light of his sworn duty to aid

in the investigation of crime, the order that he complete the test he had requested was reasonable. Appellant's refusal to obey that order impeded the investigation of a criminal offense and amounted to insubordination and unofficerlike conduct, thus warranting his discharge.

Judgment affirmed.

Kaufman, P. J., and Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 2, 1958. Gibson, C. J., Carter, J., and Schauer, J., were of the opinion that the petition should be granted.