[Civ. No. 20939. First Dist., Div. Three. June 27, 1963.]

DAVID FICHERA et al., Plaintiffs and Appellants, v. THE STATE PERSONNEL BOARD, Defendant and Respondent.

John R. Golden for Plaintiffs and Appellants.

Stanley Mosk, Attorney General, and Gerald F. Carreras, Deputy Attorney General, for Defendant and Respondent.

DEVINE, J.—Appellants were dismissed from their positions as officers of the California State Police, and they seek reinstatement by writ of mandate. They make two points: (1) that the State Personnel Board did not evaluate the case in compliance with law, and (2) that orders of appellants'

superior officers directing appellants to take polygraph, that is, lie-detector, tests were not lawful orders.

## Facts Leading to Dismissal of Appellants

On January 13, 1961, at about 5:30 in the evening, Miss Donna Edrehi, 18 years of age, visited the coffee shop of Transbay Transit Terminal, the depot from which buses leave San Francisco to traverse the bridge to the East Bay area. She had with her a Polaroid camera in a case, which she placed near the counter, where she had coffee. She forgot the camera, and did not discover the loss until shortly after midnight. She telephoned to the terminal and spoke with Officer Fichera, one of the appellants. He told her that no camera had been turned in, but that he would check in the morning.

At about 6 p.m., a waitress had seen the case on a stool and had called the assistant manager, Brown. Brown testified that he lifted the case over the counter and that it was heavy; and the waitress testified that from Brown's manner of handling the article, it seemed to be heavy. It was kept in the shop overnight, and was given to Fichera in the morning by Brown. Brown testified that its weight was 20 or 30 pounds, but Fichera reported the weight to be 2 or 3 pounds. Fichera logged the article as ''Case Tan,'' without further description, although the word ''Polaroid'' was on it. He reported that he could not open the lock of the case, but actually the case has no lock but a spring catch, and is opened easily. He placed it in a police locker, which is contrary to unit procedure, which is to inspect lost articles and forward them to headquarters. He did not report the matter of the lost article or the phone call to his relief.

On January 16, 1961, Miss Edrehi came to the shop and made inquiry, was told the lost article had been turned over to the state police, and was handed the empty case at the state police office. The next day, she inquired about the means of making a complaint, and events ensued which are described below; but Officer Fichera disappears from the scene until January 21, 1961, at 1:25 a.m. At that time, Fichera telephoned a superior officer to say that a shopping bag containing a camera had been found by him behind the police counter at the terminal.

When demand was made on Fichera to take the polygraph test, as appears below, his attorney wrote to the Acting Chief of the California State Police, saying ''it appears that there was some mix-up about the camera (which since has been re-

turned to its owner) for which our client is prepared to assume responsibility, thus making it unnecessary to give polygraph examinations to him and his brother Officers.'' The attorney suggested a reprimand, a brief suspension or other minimum punishment, and that the investigation be closed.

The inquiry about making a complaint was made by Miss Edrehi to Officer Taylor, who referred her to the sergeant. On two later occasions, she met Taylor at the terminal. On the second of these, he bought drinks for her and her girl friends, drove her home, and invited her to dinner, saying he was divorced. Actually, he was a married man with a family. The two went to dinner, had another drink, and went to a club at an army base until about 1 a.m.; then Taylor drove her home. The camera was placed at the police counter at about this time, 1 a.m., according to Fichera's statement. Miss Edrehi testified that she met Taylor the next day and he asked her if she had heard of the return of the camera, and, when she replied that she had, said, ''Well, it couldn't have been me, because I was with you last night.'' We do not relate here the testimony offered by appellants by way of denial of guilt (except to say that Fichera disclaimed the statements in his attorney's letter) because, of course, the orders to take the tests were made only following conflicting testimony, and the purpose of stating the facts generally detrimental to appellants' cause is to discuss, below, the reasonableness of the orders.

### The Demand That Officers Take Polygraph Tests, Their Dismissal and Hearings

On February 2, 1961, Lew Clingan, Acting Chief of the California State Police, issued an order requiring appellants and three other officers to submit to a polygraph examination. The other officers complied. At the time appointed for the examination, Fichera, appearing with counsel, declined to answer whether he would take the examination. Time to answer was requested and denied, but at no time has Fichera acceded to the order to take the examination. Taylor stated that he refused on the ground of principle and his constitutional rights. Later, he gave some indication that he would take the test, but later again said he would do so only if the chief would guarantee him that his constitutional rights would not be violated. The chief replied that he took full responsibility not to violate those rights, but Taylor refused to take the examination.

Appellants were dismissed by the acting chief. They ap-

pealed. The hearing officer of the State Personnel Board held lengthy hearings at which many witnesses testified, heard arguments of counsel and signed findings and a proposed decision. The findings as to each of appellants are that an order was ''issued in connection with an investigation then being conducted by State Police Sergeant Robert E. McKoy and the said Lew Clingan into the circumstances and cause of the disappearance of a camera from a lost and found locker of the California State Police at the Transit Bay Terminal in San Francisco, and were reasonable and valid.'' The officer concluded that the refusal to submit to the polygraph examination constituted insubordination and willful disobedience. In addition, as to Taylor, the hearing officer found that he had purchased intoxicating liquor for a person under the age of 21 years. On a third charge, concerning a collision in which Taylor was involved and statements made in connection therewith, Taylor was wholly exonerated. The hearing officer recommended dismissal of both officers, and the State Personnel Board adopted the proposed decision in each case.

It was stipulated and found that neither respondent nor any individual member of the board was personally present at the hearings conducted by the hearing officer; that neither respondent nor any individual member of the board read or otherwise familiarized itself or himself with the record of the proceedings made before the hearing officer nor with the phonographically recorded evidence adduced therein, nor with any exhibit, evidence, statement, report, summary or document, other than the findings and proposed decisions; and that neither respondent nor any individual member of the board (except one of the five members) read the written arguments submitted by the parties to the hearing officer.

Appellants petitioned for reinstatement by writ of mandate, and this was denied.

*Evaluation of the Cases by State Personnel Board*

Section 19582 of the Government Code provides, in subdivision (a), that ''Hearings may be held by the board, or by any authorized representative, but the board shall render the decision which in its judgment is just and proper,'' and as part of subdivision (b), ''The board itself may adopt the proposed decision in its entirety, or may reduce the punitive action set forth therein and adopt the balance of the proposed decision.''

The duties imposed upon the board, as delineated in this

statute, were somewhat lessened from those earlier existent, before amendment of section 19582 in 1953, for the statute previously had read, "The board shall consider carefully the evidence submitted in the hearing and render a decision which in its judgment is just and proper." (Stats. 1951, ch. 862, p. 2374.) Also, in 1953 former section 19585 was repealed. It had provided that "Hearings may be held by the board, or any authorized representative or referee but the decision shall be rendered by the board after careful consideration of the evidence submitted in the hearing." (Stats. 1949, ch. 1416, p. 2471.) Thus, the requirement that the board review the evidence was eliminated.

Appellants do not contend that the board violated the procedural provisions of Government Code section 19582 as it now stands, but contend that the board cannot, without violation of constitutional provisions, be given the power to act in disciplinary matters upon the proposal of a hearing officer, but must itself consider the evidence, despite the fact that the statute no longer imposes this requirement.

The part of the Constitution of California which relates to the power of the board as to dismissals reads: "Said executive officer shall perform and discharge all of the powers, duties, purposes, functions and jurisdiction hereunder or which hereafter by law may be vested in the board except that the adoption of rules and regulations, the creation and adjustment of classifications and grades, and dismissals, demotions, suspensions and other punitive action for or in the state civil service shall be and remain the duty of the board and a vote of the majority of the members of said board shall be required to make any action with respect thereto effective." (Cal.Const., art. XXIV, § 2, subd. (c).) It will be seen that this does not state that the board must review the evidence or the record. It is argued by appellants, however, that one who decides must hear, and that, therefore, article XXIV of the state Constitution, in conferring power on the board to decide upon dismissals, impliedly imposes a duty to consider the evidence, although not necessarily to see and hear the witnesses personally. ▮ Under the Administrative Procedure Act, review of the evidence is not a prerequisite, and a decision based on the findings and proposed decision of a hearing officer who has heard the evidence is valid. (*Hohreiter* v. *Garrison*, 81 Cal.App.2d 384 [184 P.2d 323].)

▮ Appellants argue that there is a difference between a

case before the State Personnel Board and one before an agency governed by the Administrative Procedure Act in this, that article XXIV of the Constitution reserves to the board the power and duty of deciding, and that this mandate carries with it an obligation to review the evidence. This does not follow. In neither case is review of the evidence commanded, and in both, due process of law is, as always, essential.

█ In this case, due process is supplied by the hearing officer's taking of evidence, his findings and proposed decision, the decision of the board based on the findings and proposal, and by review by the court even though the last is not a trial de novo, followed by this appeal.

Appellants do not complain that the findings are inadequate in form. In fact, the record shows that there was not much in dispute except the question of law, that is, whether they were obliged to take the polygraph tests. As to the second charge against Taylor, that of his escorting the minor and buying her alcoholic beverages, almost no defense was offered except that Taylor did not know her age, so that the finding of the hearing officer on this subject is not challenged seriously, if at all. Whether the punitive action against Taylor for this incident alone would have been that of dismissal is not made clear, however, so it is necessary to consider the orders as to the polygraph in his case as well as Fichera's.

### Refusal to Take Polygraph Test

█ A question put by appellants preliminary to the principal one is, whether Fichera and Taylor actually refused to take the test. As stated above, Fichera had asked for a brief continuance in which to reply, and then refused to answer. At no time did he offer to take the test, and it is reasonable to regard the order as a continuing one, compliance with which might have led to rescission of the dismissal or reinstatement by the board. █ Taylor's insistence that his constitutional rights be protected was met by assurance that they would be. Following this, he flatly refused to take the test, without hearing any questions that might be put. Plainly, this is a challenge to any taking of the test.

Orders to take polygraph tests by police officers have been sustained in *McCain* v. *Sheridan,* 160 Cal.App.2d 174 [324 P.2d 923], and *Frazee* v. *Civil Service Board,* 170 Cal. App.2d 333 [338 P.2d 943]. In *McCain,* the officer had at first asked for the test, and later refused to obey an order

to take it, but if there existed some slight element of estoppel, this was not the basis for the decision; the basis was the need for confidence of the public in officers who have sworn to uphold and enforce the laws, which require officers, under certain circumstances, to risk self-incrimination, not in defense against accusation of criminal conduct, but in the course of maintaining their positions. In *Frazee,* the same decision was made in a case where the officer had not at any time requested the test. In both cases, the distinction between the constitutional right of a private person to refuse to incriminate himself and the special privilege of holding a law enforcement office, laid down in *Christal* v. *Police Commission,* 33 Cal.App.2d 564, 568 [92 P.2d 416], was cited.

Appellants realize that these decisions are against them (the decisions were called to their attention when the orders were given to them). Their arguments against the application of these decisions, and our disposition of the arguments, are contained in the following paragraphs.

█ 1. Appellants contend that as members of the California State Police they do not hold the peculiar and delicate position of regular police officers and are not held to the same duties. We find this to be without merit. Although their duties are exercised in and about state buildings and grounds, members of the state police are peace officers. They are paid by the state. They must be regarded as holding a position of confidence.

2. Appellants contend that the orders were unreasonable and a denial of due process, and that the circumstances herein differ from the decided cases in that in the *McCain* case a theft had been committed, and in *Frazee* the officer had been accused by a citizen of attempt to commit a felony, but that in this case no crime was charged and the camera actually was returned. █ It is, of course, true that there may be many circumstances wherein a superior's order that a subordinate officer submit to a polygraph test would be unreasonable. (*Frazee* v. *Civil Service Board, supra,* 170 Cal.App.2d at p. 336.) █ The recitation of facts given above shows, however, that there was ample cause for the order in this case. As to Fichera, the conflict of his statement with those of the employees of the coffee shop, the doubtful statement about inability to open the case, the return of the camera during his watch, and the letter from his attorney accepting responsibility, warranted the order. █ As to Taylor, the

escorting of the owner of the missing camera, commencing when the camera was missing and lasting until its return, under all of the circumstances described above, justified the order as to him.

3. Appellants argue that the *McCain* and *Frazee* cases should be abandoned. They contend that any ordering of polygraph tests is a dangerous intrusion on the privacy of individuals, and that the tests are unreliable. Remembering that the cases above do not stand for any more than the upholding of orders to take polygraph tests by law enforcement officers, and as to them only when appropriate circumstances are present, and that the situation in the case before us calls for no extension of the rule in the cases cited, we see no reason for disavowing those cases. The polygraph is an extension of the age-old process of assessing the veracity of a witness, by scrutinizing his facial expression, rubescence, tremors, evasion of meeting the eye, and the like. It works through externals and is quite distinct from drug induced revelation, hypnosis, or any other form of narcoanalysis. In the limited field of cases such as this one, and those of the prior cases cited above, we find no deprivation of constitutional or legal rights.

It may be conceded that there is a considerable degree of fallibility with the polygraph (see Skolnick, *Scientific Theory and Scientific Evidence: An Analysis of Lie-Detection*, 70 Yale L.J. 694). It is not considered to be enough reliability to justify the admission of expert testimony in the courts based on its results, and a person's willingness or unwillingness to take the test is without enough probative value to justify its admission. (*People* v. *Carter*, 48 Cal.2d 737, 752 [312 P.2d 665].) It was recognized in the *Frazee* case, however, that it does not follow that the tests are completely without value (170 Cal.App.2d at p. 335). The test might have proved useful in limiting and channeling the investigation in this case, in which three officers besides appellants were directed to take the tests, and acceded. It might have been an instrument of exculpation and vindication, on the one hand, or of more intensive investigation of the subjects of the test, on the other. We cannot, of course, tell what would have been the ruling of the State Personnel Board, or what our own ruling might have been, had the tests been taken and had produced results considered damaging by appellants' superiors. We do hold, however, that appellants were not entitled to withhold this means of investi-

gation and at the same time retain their positions as officers of the California State Police.

Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 20, 1963. Peters, J., did not participate therein. Schauer, J., was of the opinion that the petition should be granted.