Leon D. Lazeb, J.
May a police officer be compelled to submit to a polygraph examination on pain of dismissal during the course of a departmental investigation of alleged misconduct of a fellow officer Í
*152 This issue of apparent first impression in this State reaches the court via an article 78 proceeding instituted to enjoin the Commissioner of the Suffolk County Police Department from • requiring the petitioner, Detective Dolan of the homicide squad, to submit to such a test. While the Commissioner denies ordering petitioner to do so, he avers that such an order will follow if the current “ request ” is refused. Clearly, the institution of this suit by Detective Dolan, after several postponements of the test, constitutes a refusal. The Commissioner’s current posture in the face of this proceeding can scarcely be deemed less than an order. Thus a justiciable controversy is before the court and the parties seek resolution of it.
The facts are these. In June of 1973 Detective Dolan and his homicide squad partner were called to the scene of an alleged suicide. Another detective who was also present subsequently reported to his superiors that petitioner’s colleague, while inventorying the deceased’s property, had removed a sum of money from the victim’s pocket to his own, an allegation which was also made by the deceased’s father. During the investigation which was immediately commenced by the Police Department, petitioner and his partner made oral and written statements declaring their innocence and disavowing knowledge of any looting. The partner and the third detective thereafter submitted to polygraph tests which the former “ failed ” and the latter “ passed ”. Petitioner was then requested to submit to a similar examination in order to verify his assertions of his colleague’s innocence. Although Detective Dolan appeared for the scheduled test, it was postponed because the examiner found him in such nervous condition as to preclude a proper reading. After two additional postponements, petitioner instituted this proceeding.
It is Detective Dolan’s position (as set forth in his law memorandum) that the Commissioner has confronted him with a Hobson’s choice; either he submits to the examination and risks self incrimination or he will be suspended or dismissed from his employment. He asserts that the Commissioner’s order violates his rights under the Federal and State Constitutions, and that his career will be unfairly jeopardized because the polygraph test is notoriously inaccurate.
It is the Commissioner’s view that the polygraph test is a useful investigatory tool principally utilized to clear the innocent and eliminate suspects rather than to establish guilt. He denies that Detective Dolan is the object of the investigation but concedes that the situation may change. Looting of a dead body, he declares, is a heinous crime requiring a complete investiga *153 tion. He maintains that a police department is a quasi-military organization and that tight discipline is essential.
The fifth amendment privilege against self incrimination is applicable to the States (Malloy v. Hogan, 378 U. S. 1; Murphy v. Waterfront Comm., 378 U. S. 52) and its protection is as available to State and municipal employees, including police officers, as it is to any other citizen (Garrity v. New Jersey, 385 U. S. 493; Spevack v. Klein, 385 U. S. 511; Gardner v. Broderick, 392 U. S. 273; Sanitation Men v. Sanitation Comr., 392 U. S. 280).
nevertheless, the privilege against self incrimination is not a bar to dismissal of a police officer who refuses to answer questions specifically, directly and narrowly relating to the performance of his official duties when he is not required to waive his immunity with respect to the use of his answers in a subsequent criminal proceeding (Gardner v. Broderick, supra; Spevack v. Klein, supra [concurring opn.]; Sanitation Men v. Sanitation Comr., supra; Matter of McGrath v. Kirwan, 32 A D 2d 700, mot. for lv. to app. den. 25 N Y 2d 744). In such a case the employee’s right to immunity is not at stake (Sanitation Men v. Sanitation Comr., supra) and it is well settled that if a public employee refuses to testify as to a matter concerning which his employer may legitimately inquire, he may be discharged for insubordination (Lerner v. Gasey, 357 U. S. 468; Kammerer v. Board of Fire and Police Comm., 44 Ill. 2d 500; Silverio v. Municipal Ct. of City of Boston, 355 Mass. 623, cert, den. 396 U. S. 878; Matter of McGrath v. Kirwan, supra). To state that a person does not have a constitutional right to government employment is only to say that he must comply with the reasonable, lawful and nondiscriminatory terms laid down by the proper authorities (Slochower v. Board of Educ., 350 U. S. 551). In Garrity the Supreme Court prohibited the use in subsequent criminal proceedings of coerced statements of police officers made during departmental investigation and in Perla v. New York (392 U. S. 296), a statute requiring governmental employees to waive their immunity against such use of coerced statements was struck down.
Clearly, the instant petitioner may not be required to waive his immunity, and if he does so under compulsion his testimony cannot be used against him in a subsequent criminal prosecution. The subject of his interrogation relates specifically, directly and narrowly to the performance of his duties for he was engaged in the performance of them when the acts under investigation are purported to have taken place in his presence. As a public employee petitioner must account for performance of *154 Ms public trust (Sanitation Men v. Sanitation Comr., supra). As a police officer he is a member of a highly sensitive agency, entrusted and charged with the duty of protecting the commumty it serves from the evils of crime and corruption. That agency is entitled to his full co-operation when it seeks to purge itself of members who may have engaged in criminal or disreputable acts (Seattle Police Officers’ Guild v. City of Seattle, 80 Wn. 2d 307). Therefore, dismissal of petitioner would be warranted upon his refusal to testify during such an inquiry.
It is not a per se refusal to testify, however, that has borne the issue to this court — it is a directive to undergo an examination wMch purportedly will evaluate the truth of petitioner’s testimony. His thrust against the legality of that directive is predicated on both unconstitutionality and the theory that, absent statutory authority, it is arbitrary and capricious to imperil Ms career by compelling submission to an unreliable test.
The Commissioner cites no statute which authorizes him to reqrnre members of the police force to undergo polygraph examination. Neither is there a statute which precludes such a requirement although on at least one occasion a bill prohibiting employers from subjecting their employees to such tests as a condition of employment was passed by the Legislature but vetoed by the Governor (see discussion of Senate Bill Int. No. 279 [1965] in The Polygraph in Private Industry: Regulation or Emulation, 15 Buffalo L. Rev. 655). Nevertheless, the Commissioner has a justifiable interest in ascertaimng whether the petitioner, in his answers, is refusing to tell the truth or is being evasive. When such refusal or evasion is palpable such conduct may be deemed a refusal to answer punishable by contempt proceedings or even by a perjury prosecution (Matter of Ruskin v. Detken, 32 N Y 2d 293). Here the consequences of falsehood are much more severely limited. The issue then reduces itself to a determination as to whether the pursuit of that justifiable interest may be furthered by the use of the polygraph examination.
The polygraph test is widely utilized by governmental agencies (see Hearings on Use of Polygraphs as “ Lie Detectors ” by the Federal Government Before the House Committee on Government Operations, 88th Cong. 2d Sess. [1964]) and by private industry (see, e.g., Vaughn, New Trends in Admissibility of Polygraph Tests and Spectogram Voiceprint Identification Evidence, 3 Memphis State L. Rev. 282 [1973]; 15 Buffalo L. Rev. 655; Lie Detectors in Private Employment: A Proposal for *155 Balancing Interests, 33 Geo. Wash. L. Rev. 932). Such tests are considered an especially valuable investigatory tool in police work, guiding police investigators in their hypotheses (3 Wig-more on Evidence [3d ed.], § 999, p. 646) and employment by law enforcement agencies is frequent (see Lone Star Co., 57 LRRM 1365). The use is not without criticism, however. Organized labor apparently has regarded it as an invasion of privacy and violative of the privilege against self incrimination (33 Geo. Wash. L. Rev. 932) and the National Labor Relations Board has viewed with skepticism use of it by employer as a condition of employment (see, e.g., Skaggs-Stone, Inc., 40 LA 1273; Louis Zahn Drug Co., 40 LA 352).
Controversy concerning the reliability of the polygraph proceeds apace. Critics claim that there is no firm scientific proof that lying necessarily produces any physiological reaction (The Emergence of the Polygraph at Trial, 73 Col. L. Rev. 1120, 1122) or that anxiety is caused by lying or that it creates the physical reactions the machine measures (Skolnick, Scientific Theory and Scientific Evidence: An Analysis of Lie-Detection, 70 Yale L. J. 694). Mental or physical abnormalities can render the test invalid (Floch, Limitations of the Lie Detector, 40 J. Crim. L. & C. 651). Polygraph test results are generally not admissible in a trial (22A C. J. S., Criminal Law, § 645 [2]) and the prevailing rule in this State precludes their introduction (People v. Leone, 25 N Y 2d 511; People v. Forte, 279 N. Y. 204; People v. Dobler, 29 Misc 2d 481). Nevertheless, admission of such results in civil cases is not unprecedented (see, e.g., Walther v. O’Connell, 72 Misc 2d 316; Matter of Stenzel v. B., 71 Misc 2d 719; State v. McDavitt, 62 N. J. 2d 36).
In Fichera v. State Personnel Bd. (217 Cal. App. 2d 613, 622) the polygraph test was described as follows: ' ‘ The polygraph is an extension of the age-old process of assessing the veracity of a witness, by scrutinizing his facial expression, rubescence, tremors, evasion of meeting the eye, and the like. It works through externals and is quite distinct from drug induced revelation, hypnosis, or any other form of narcoanalysis.”
Thus, use of the polygraph is emulative in various respects of the use of human judgment in evaluating some of the directly visible physiological and manneristic responses of any witness in order to weigh credibility. Yet no responsible voice would decry as unuseful (or unconstitutional) the application of such criteria by human beings possessed of all the accustomed fallibilities. Those ancient tests clearly are not scientifically accurate but they are in universal use and are frequently the basis for a determination of actual and final guilt particularly where no *156 objective criteria to test credibility are present. Polygraph results are rarely accorded such respect but their use for purposes reasonably circumscribed is certainly widespread. Patently the users adjudge their performance adequate. It is not for this court on this record to conclude otherwise.
In his law memorandum, petitioner relies principally on Engel v. Township of Woodbridge (124 N. J. Super. 307) in which a dismissal for refusal to submit to the test was annulled. The court’s reasoning was predicated on section 2A: 170-90.1 of the New Jersey Statutes, a statute which provides that an employer who requires an employee to submit to a lie detector test is a disorderly person. In the other two jurisdictions which have also disallowed dismissal for refusal to undergo the test, the determinations were to some extent based on the excessive severity of the punishment, although the alleged unreliability of the test was a principal factor (see Molino v. Board of Public Safety of City of Torrington, 154 Conn. 368 and Stape v. Civil Serv. Conn. of City of Philadelphia, 404 Pa. 354).
A contrary result has been reached in other jurisdictions which have confronted the issue of a police officer’s refusal to submit to a polygraph test during the course of a departmental investigation (see Fichera v. State Personnel Bd., 217 Cal. App. 2d 613, supra; Frazee v. Civil Serv. Bd. of City of Oakland, 170 Cal. App. 2d 333; McCain v. Sheridan, 160 Cal. App. 2d 174; Coursey v. Board of Fire and Police Comrs. of Vil. of Skokie, 90 Ill. App. 2d 31; Dieck v. Department of Police, 266 So. 2d 500 [La. App. 1972]; Clayton v. New Orleans Police Department, 236 So. 2d 548 [La. App. 1970]; Roux v. New Orleans Police Department, 223 So. 2d 905 [La. App. 1969]; Seattle Police Officers’ Guild v. City of Seattle, 80 Wn. 2d 307, supra). In Seattle Police Officers’ Guild a departmental administrative investigation dealt with police pay-offs which had received much local publicity. The Acting Police Chief required the interrogated officers to answer questions and in some cases to submit to polygraph examination or face dismissal. The questioning was specifically, directly and narrowly related to past performance of official duties and the Acting Chief asserted that no officer would be requested to waive immunity against self incrimination and that each would be advised that the information acquired from him by testimony or examination could not be used in subsequent criminal proceedings against him. After determining that the investigation and the order to the petitioner to submit to examination were within the principles of Garrity, Sanitation Men and Gardner the Washington Supreme Court held (p. 319): “ Under these circumstances, we conclude *157 and hold that if, in the exercise of prudent judgment, the investigating authority determines it reasonably necessary to utilize the polygraph examination as an investigatory tool to test the dependability of prior answers of suspected officers to questions specifically, narrowly, and directly related to the performance of their official duties, then such investigating authority may properly request such officers to submit to a polygraph test under pain of dismissal for refusal.”
Although a police department is not, as the Commissioner declares, a quasi-military organization (see Dwen v. Barry, 483 F. 2d 1126 [2d Cir. 1973]) the effective operation of such a department requires that suspected misconduct of members of the force be thoroughly investigated. The polygraph can be a useful investigative tool when the test is expertly prepared and administered and interpreted by a qualified person. While it is not accurate to the degree that absolute judgments can be made as to the veracity of the individual tested, the results are frequently reliable within recognized limits (Coursey v. Board of Fire and Police Comrs. of Vil. of Skokie, 90 Ill. App. 2d 31 supra). Thus, as stated by the Commissioner, the results of the test may be of assistance in absolving the innocent or at least in limiting the field of suspects. It follows that such results may be of service to him in determining whether disciplinary proceedings should be instituted when there is an accusation which is controverted as untrue by an officer under suspicion.
The petitioner has refused to co-operate in what is plainly a reasonable effort by the Commissioner to ascertain whether a fellow officer in the Suffolk County Police Department has violated his trust and performed his duties in a corrupt fashion. There is no constitutional prohibition which petitioner may raise against testifying under the circumstances stated and there is no statutory bar to the use of polygraph examinations by either public or private employers. Detective Dolan’s fear that his career may suffer by virtue of polygraph results cannot weigh against his duty to assist the. Commissioner in his efforts to ascertain the existence of immoral or criminal conduct within the department. The fear has not assumed the status of a right and in this mandamus proceeding it is petitioner’s burden to establish a clear legal right to relief (Matter of Perazzo v. Lindsay, 30 A D 2d 179, affd. 23 N Y 2d 764) which does not admit to reasonable doubt or controversy (Matter of Burr v. Voorhis, 229 N. Y. 382; Bank of New York, Albany v. Hirschfeld, 74 Misc 2d 734). Even then, the granting of relief under this extraordinary remedy is discretionary (Matter of Andresen v. Rice, 277 N. Y. 271; Matter of Ahern v. Board of Supervisors *158 of County of Suffolk, 6 N Y 2d 376; Matter of General Bldg. Contractors of N. Y. State v. Board of Trustees, Vil. of Cayuga Hgts. 42 A D 2d 660). The claim of lack of scientific accuracy of polygraph results affords no basis for the substitution of judicial judgment for that of the Commissioner. His discretion in the management of the Police Department in the course of a self-cleansing operation is not an appropriate subject for judicial interference, even though his actions are always subject to judicial scrutiny should they infringe on protected rights. Such infringement has not been demonstrated here.
The petition is dismissed.