No. 82-284

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

BRUCE P. OBERG,

Plaintiff and Appellant,

-vs-

CITY OF BILLINGS, a municipal corp.,
HOWARD C. PORTER, NOEL RIGBY and
NATHANIAL W. MORRIS, et al.,

Defendants and Respondents.

---

APPEAL FROM: The District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jones, Jones & Work; Blair Jones argued, Billings,
Montana

For Respondents:

Peterson, Schofield & Leckie; Dane Schofield argued,
Billings, Montana

---

Submitted: January 13, 1983

Decided: December 22, 1983

Filed: DEC 22 1983

*Ethel M. Harrison*

---
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Bruce P. Oberg, a Billings police officer appeals from a summary judgment of the Yellowstone County District Court upholding a determination of the Billings Police Commission that Officer Oberg was guilty of insubordination for refusing a direct order to take a polygraph examination. The trial court enforced the Police Commission's recommendation that Officer Oberg be suspended without pay for 15 days, followed by a six-month probationary period. Officer Oberg challenges the constitutionality of that part of a statute which provides that only employees of public law enforcement agencies can be compelled to take polygraph examinations.

Officer Oberg has challenged the statute on five constitutional grounds. He claims that the exception for public law enforcement agencies violates his constitutionally guaranteed right to equal protection of the laws, right to privacy, freedom from unlawful search and seizure, freedom from compelled self-incrimination and due process.

We reverse the trial court's summary judgment and declare that section 39-2-304(2), MCA, is an unconstitutional violation of public law enforcement agency employees' right to equal protection of the laws. Although we believe the statute also offends the equal protection clause under the Fourteenth Amendment to the United States Constitution, we limit our holding to the conclusion that the statute offends the equal protection clause under Art. II, § 4, of our own constitution. We therefore limit our discussion to the equal protection issue and do not reach the remaining issues.

We summarize the agreed statement of facts submitted to the trial court. Bruce P. Oberg, a Billings police officer

- 2 -

arrested a citizen who later filed a complaint with the police department claiming that Officer Oberg struck him after he was arrested and handcuffed. As a part of the police department's internal investigation of the citizen's complaint, the police chief wrote to Oberg on July 24, 1979, and formally ordered Oberg to submit to a polygraph examination. On July 27, 1979, Oberg responded by letter informing the police chief that he refused to submit to the polygraph examination. Officer Oberg asserted that mandatory compliance with the police chief's order violated various constitutional rights guaranteed by both the United States and Montana Constitutions.

The Chief of Police then filed charges against Officer Oberg and brought the matter before the Billings Police Commission. The Chief of Police charged among other things that Officer Oberg's failure to comply with the order to submit to a polygraph examination constituted insubordination.

The Billings Police Commission held a hearing and later on October 15, 1979, found Officer Oberg guilty of insubordination and ordered that Officer Oberg be disciplined by removal from duty for fifteen working days with forfeiture of all wages for that period of time together with the imposition of a six month probationary period.

On October 19, 1979, the acting city administrator issued an order enforcing the decision of the police commission. On December 11, 1979, Oberg filed a petition in Yellowstone County District Court for judicial review. After the pleadings were filed both Oberg and the City moved for summary judgment on the ground that no issues of material fact were presented to the trial court for resolution. The

trial court granted the City's motion for summary judgment and held that the polygraph provision as applied to police officers was constitutional.

The statute involved, section 39-2-304(1), MCA, provides:

> "Lie detector tests prohibited--exception. (1) No person, firm, corporation, or other business entity or representative thereof shall require as a condition for employment or continuation of employment any person to take a polygraph test or any form of a mechanical lie detector test. A person who violates this section is guilty of a misdemeanor.
>
> "(2) This section shall not apply to public law enforcement agencies."

We hold that subsection (2) denies employees of public law enforcement agencies equal protection of the law in violation of state constitutional provisions. The Montana Constitution, Art. II, § 4, states:

> "Individual dignity. The dignity of the human being is inviolable. No person shall be denied the equal protection of the laws. Neither the state nor any person, firm, corporation, or institution shall discriminate against any person in the exercise of his civil or political rights on account of race, color, sex, culture, social origin or condition, or political or religious ideas."

In upholding the exception that permits employers to give polygraph tests to public law enforcement agencies, the trial court applied a strict scrutiny analysis. The trial court assumed that because a right of privacy violation was alleged, a strict scrutiny analysis was required. However, we have held that a mere allegation that a fundamental right is burdened is insufficient to trigger a strict scrutiny analysis. Godfrey v. Mont. State Fish & Game Com'n. (1981), ___ Mont. ___, 631 P.2d 1265, 38 St.Rep. 661. Here, the plaintiff has challenged a general legislative classification but has failed to lay the groundwork for a claim that the classification either burdened a fundamental right or

- 4 -

involved a suspect criteria. Examples of fundamental rights include privacy, freedom of speech, freedom of religion, right to vote and right to interstate travel. Examples of suspect criteria are wealth, race, nationality and alienage.

Plaintiff has not gone beyond the mere allegation that the required polygraph test violated his right to privacy. The accusations against plaintiff unquestionably involved his work as a police officer, and as such he could not reasonably claim that the police department could not investigate his actions based upon a citizen's complaint. He could be questioned and otherwise required to cooperate with an interdepartmental investigation based on the citizen's complaint. Because we feel plaintiff has failed to show that any fundamental right was substantially abridged by the statute, we determine that it was unnecessary to apply the strict scrutiny analysis to the challenged part of the statute. However, even under the less vigorous test requiring that a classification must bear a rational relationship to a legitimate governmental purpose, section 39-2-304(2), MCA, still must fail a challenge under the equal protection clause of our state constitution.

This Court cannot determine whether this classification bears a rational relationship to a legitimate governmental purpose because there is no expressed purpose for the classification on the face of the statute or in the statute's legislative history. For that reason, the challenged part of the statute is overbroad and vague on its face, and an unconstitutional violation of the plaintiff's right to equal protection of the law.

Subsection (1) of the statute is a directive to all employers in this state--private and public--telling them

that they cannot subject a prospective employee or an employee to polygraph examination, either as a condition of gaining employment or as a condition of retaining employment. The intent is crystal clear. Subsection (2), however, is different. That subsection creates a class of people who for some undeclared reason are not to receive the protection against compelled polygraphs provided in subsection (1). While the courts are seldom concerned with the wisdom of legislation, the purpose of the legislation is of vital concern where the constitutionality of a statute is challenged as a denial of equal protection. Did the legislature intend, for example, that not only police officers, but other law enforcement employees such as secretaries, clerks, dispatchers, meter maids and dogcatchers be subject to the requirements of a polygraph examination? All these people are as much employees of law enforcement agencies as are police officers.

No rational basis is discernible from the statute that would justify excluding employees of "public law enforcement agencies" from the protection given to all other private and public employees in this state. The exclusion gives no limit of the classification's scope, and the legislative history is so scant that it provides no substantive background regarding the purpose or scope of the classification.

The City would have us read the exclusion as applying only to police officers, but we cannot read the exclusion so narrowly. Rather, it must be read to include all employees of public law enforcement agencies. To hold that all these employees were not entitled to the benefit of the statute would make them second class citizens. The loose wording and absence of enforcement guidelines from which a purpose for

- 6 -

the classification might be discerned, make this statute unconstitutional on its face.

The City argues that the statute must at least permit the administering of polygraph examinations to police officers. Police officers may be placed in a special class for purposes of administering polygraph examinations, the City argues, because they occupy a particularly high position of public trust, and it is the goal of the City to maintain law enforcement agencies of the highest integrity. But this argument is no less true for all governmental departments and agencies. Still, under the statute, no government employee or prospective government employee can be compelled to take a polygraph examination unless he was applying for a job with or had a job with a "public law enforcement agency."

We are not tempted to create second class citizenship for police officers by redefining and tailoring the term "public law enforcement agencies" to apply only to police officers. It would not be fair for this Court to save the statutory exception by dreaming up a rational relationship to some governmental purpose by filling the void left by the legislature and declaring that the necessity of maintaining high standards in our police officers is justification for the statutory exception. The first part of the statute is a clear declaration of public policy that forbids employer use of polygraph examinations as a tool for conditioning employment or continued employment. If this blanket statutory protection to all employees is to be withdrawn from a class of employees, it is the legislature, not this Court, that must define that class and set forth the policy behind denying the protection expressly granted to all other employees in this state.

In arguing the maintenance of public trust in police officers as a justification for giving them polygraph examinations, the City has had to speculate that this was the purpose behind the amendment to the statute. We also would be required to speculate on the purpose behind the amendment. The statute, before it was amended to include subsection (2), was clearly intended to benefit all private and public employees and to act as a bar to employer use of polygraph for employees or prospective employees. Under these circumstances we are neither equipped nor inclined to define the purpose behind the "public law enforcement agencies" exception. In a dissent to Schulte Co. v. Gangi (1946), 328 U.S. 108, 121-122, 66 S.Ct. 869, 90 L.Ed. 1045, Justice Frankfurter wrote that "the 'policy' of a statute should be drawn out of its terms as nourished by their proper environment, and not, like nitrogen, out of the air." We believe this to be especially so where the legislature has enacted legislation for the benefit of all private and public employees of this state, but then creates a special class that is not entitled to the protection of the statute. It is not our role to breathe life into a statute that is unconstitutional on its face. We will not grab out of the air what we consider to be an acceptable judicial rationalization of legislative action. The legislature must declare the policy and purpose behind its laws. Here, it has failed to do so.

We cannot doubt that police officers occupy a position of public trust in our society, but this fact does not breathe life into an ambiguous statute whose enforcement is sought exclusively against police officers. By the clear wording of the statute, secretaries, clerks, dispatchers,

- 8 -

meter maids and dogcatchers are as much employees of public law enforcement agencies as are police officers, but they do not occupy the same position of power and concomitant trust that must reside in our police forces. To hold that all "public law enforcement agencies" can be compelled, under the statute, to take a polygraph examination, would be to stamp them all as second class citizens. And an interpretation restricting the classification to police officers would stamp an even smaller class as second class citizens.

Other states have adopted similar legislation regulating the use of lie detectors in the employment context. Some of these states have also provided exceptions to the ban on the use of lie detectors and some have even singled out law enforcement agencies. Regardless of the purpose behind such a classification by other states, when our legislature has failed to declare its purpose for a statutorily created classification, we will not look to other jurisdictions. We cannot rely on the purpose behind similar legislation in other states to save an ambiguous statute in our own state when our legislature has failed to declare its purpose behind the statute. Interestingly, California has specifically provided that no "public safety officer" can be compelled to take a polygraph test and the officer's refusal cannot in any way affect his employment status. See, Cal. Gov't. Code § 3307 (West 1971).

Had the legislature provided any evidence that the statute was only to apply to police officers because of their positions of high public trust and integrity, we would have no trouble upholding the statute under the rational relationship test. However, such a statute could still be attacked under the strict scrutiny test. It would be up to

- 9 -

the challenging officer to provide evidence that a fundamental right, such as invasion of privacy, would be violated. It would then be up to the state or local government to show a compelling public interest to justify the invasion. Art. II, § 4 of our state constitution provides for the protection of every citizen's "individual dignity." It cannot be doubted that subjecting one to a lie detector test is an affront to one's dignity and unless strictly structured can be an invasion of privacy. The legislators were concerned with the types of questions that can be used by polygraph examiners to establish a response pattern and this concern was expressed in committee hearings preceding the passage of this statute. (See House Committee on Labor and Employment Committee Minutes, January 25, 1974.) We cannot assume that in administering a polygraph examination all questions would be confined to employment-related matters. Assuming furthermore, that a statutory exception were enacted to specifically exclude policy officers from the general statutory protection granted all other employees in this state, we doubt that such an exception would survive a sustained attack under the strict scrutiny test.

Although we declare section 39-2-304(2), MCA, to be unconstitutional because it denies to plaintiff equal protection of the law, we emphasize nonetheless that employees of law enforcement agencies can be questioned or otherwise required to cooperate in interdepartmental investigations. The accusations against plaintiff involved his work as a police officer, and as such he could not reasonably claim that the police department could not investigate his actions based on a citizen's complaint.

However, the police department's order that plaintiff take a polygraph examination violated plaintiff's right to equal protection of the law.

The order of the District Court is reversed.

_Daniel J Shea_
Justice

We Concur:

_____
Chief Justice


_____


_____

_John G Sheely_
_____


_____
Justices

Mr. Justice Frank B. Morrison, Jr. specially concurring:

I concur in the result but disagree with "rational basis" as the premise for this result.

The Montana State Constitution, Article II, Section 10, provides:

> "The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest."

Subsection 2 of section 39-2-304 subjects employees of public law enforcement agencies to an invasion of their right to privacy by allowing employers to require them to submit to polygraph examinations. It is difficult to conceive of a greater privacy invasion and although it could be argued there is a compelling state interest to require police officers to submit to polygraph examinations there is no compelling state interest requiring all employees of public law enforcement agencies to so submit.

This case involves the implication of a fundamental right, that is the right of privacy, and therefore strict scrutiny attaches. White v. State (Mont. 1983), 661 P.2d 1272, 40 St.Rep. 507.

I agree with the majority opinion that there is no justifiable basis for this class legislation. However, it is important to note that our State Constitution, in this case, extends greater protection than does the Federal Constitution. There is a specific privacy provision in our State Constitution which implicates a fundamental right and requires a strict scrutiny analysis. This may or may not be true under the Federal Constitution. We accorded a broader equal protection in White v. State, supra, on the basis of constitutional language present in the Montana State

-12-

Constitution but not present in the Federal Constitution. The same rationale applies here and provides a solid basis for turning this case on the State Constitution rather than the Federal Constitution.

Subsection 2 of section 39-2-304, MCA, is unconstitutional and must be stricken from the statute. Subsection 1 of the same statute provides that no employee shall be subjected to a polygraph examination and this language protects Bruce P. Oberg, the appellant.

_____
Justice

_____
Justice

_____
Justice

Mr. Chief Justice Frank I. Haswell, dissenting:

I would hold section 39-2-304(2), MCA, constitutional on its face and as applied to the facts of this case.

At the outset, Officer Oberg lacks standing to attack the statute on the ground that it requires other employees of law enforcement agencies (such as secretaries, clerks, dispatchers, meter maids and dog catchers) to submit to polygraph examinations. The normal rule is that constitutional rights are personal and a person cannot defeat a statute on the ground that it might in other applications violate the rights of third persons. United States v. Raines (1960), 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524; Broderick v. Oklahoma (1973), 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830; Wurtz v. Risley et al. (9th Cir. 1983), ___ F.2d ___ (Cause 82-3352, decided November 8, 1983).

Secondly, the legislature is not required to express the policy and purpose behind its laws in order to withstand an equal protection attack based on an alleged discriminatory classification. Examples abound in Montana case law upholding legislative classifications absent an expressed purpose and policy for the classification: Linder v. Smith (Mont. 1981), 629 P.2d 1187, 38 St.Rep. 912 (upholding constitutionality of Montana Medical Legal Panel Act); Matter of Montana Pac. Oil & Gas Co. (Mont. 1980), 614 P.2d 1045, 37 St.Rep. 1238 (upholding constitutionality of legislative classification applicable to all mineral producers holding unclaimed interests in minerals); State v. Gafford (1977), 172 Mont. 380, 563 P.2d 1129 (upholding constitutionality of classification of prior convicted felons for special treatment); Burritt v. City of Butte (1973), 161 Mont. 530, 508 P.2d 563 (establishing different classifications between resident freeholders and nonresident freeholders or resident nonfreeholders with respect to an annexation statute).

14

Finally, I would hold that a rational relationship to a legitimate state interest exists in this case for classifying and treating "employees of law enforcement agencies" differently from other public employees.

This Court has recognized that "[t]he similar provisions of the equal protection clauses of the United States and Montana Constitutions provide generally equivalent but independent protection in their respective jurisdictions." Emery v. State (1978), 177 Mont. 73, 580 P.2d 445, cert. denied, 439 U.S. 874, 99 S.Ct. 210, 58 L.Ed.2d 187. No basis can be found in the proceedings of the Montana Constitutional Convention to indicate an intention to treat our equal protection guarantee any differently than its counterpart in the United States Constitution. One who attacks a statute as violating equal protection has the burden of proving that the classification is arbitrary. State v. Jack (1975), 167 Mont. 456, 539 P.2d 726. Officer Oberg has failed to do so.

A rational basis exists for the exclusion of public law enforcement agencies from the prohibition on the use of lie detector tests. That rational basis is the use of the lie detector in internal investigations for the maintenance of a police department that "is of the highest integrity and beyond suspicion." Eshelman v. Blubaum (1977), 114 Ariz. 376, 560 P.2d 1283, 1285. See also, McCain v. Sheridan (1958), 160 Cal.App.2d 174, 324 P.2d 923; Fichera v. State Personnel Board (1963), 217 Cal.App.2d 613, 32 Cal.Rptr. 159; Coursey v. Board of Fire and Police Commissioners (1967), 90 Ill.App.2d 31, 234 N.E.2d 339; Roux v. New Orleans Police Department (La.App. 1969), 223 So.2d 905; Seattle Police Officers' Guild v. City of Seattle (1972), 80 Wash.2d 307, 494 P.2d 485; Richardson v. City of Pasadena (Tex.Civ.App. 1973), 500 S.W.2d 175; Dolan v. Kelly (1973), 348 N.Y.S.2d

15

478; Baker v. City of Lawrence (Mass. 1979), 409 N.E.2d 710; State Department of Highway Safety, Etc. v. Zimmer (Fla. 1981), 398 So.2d 463.

About ten states, including Montana, have passed similar legislation regulating the use of polygraph tests in employment situations. See, Alaska Stat. § 23.10.030; Cal. Labor Code § 432.2 (West 1971); Cal. Gov't Code § 3307 (West 1971); Conn. Gen. Stat. § 31-51 (1983); 19 Del. Laws 704 (1979); Hawaii Rev. Stat. § 378-21 (1976); Idaho Code §§ 44-903, 904 (1977); Md. Ann. Code Art. 100, § 95 (1978); Mass. Gen. Laws Ann. Ch. 149, § 19B (West 1982); Or. Rev. Stat. §§ 659.225, 659.227; R. I. Gen. Laws § 28-6.1-1 (1979); Wis. Stat. § 111.37 (1974). Of those nine other states, five states (Alaska, California, Connecticut, Idaho and Maryland) have enacted specific exclusions for a class of employees. The exclusions range from police departments and law enforcement agencies to federal agencies. In each instance, the state legislature recognized a rational basis for such classification.

The compelling interest which necessitates the classification was succinctly described by the Supreme Court of Washington:

> "A police department is a highly-sensitive agency entrusted and charged with the duty of protecting the community it serves from the evils of crime and corruption. To efficiently and effectively accomplish its mission it requires the respect and regard of the public, and when it has reason to believe that some of its members may be engaging in disreputable practices, it has a valid interest in purging itself of such practices through internal departmental procedures and the right to require the full cooperation of its membership to this end." Seattle Police Officers' Guild v. City of Seattle (1972), 80 Wash.2d 307, 494 P.2d 485, 490.

16

Public law enforcement officials occupy a unique position in that they are empowered to do certain acts which can have vast and far-reaching consequences. They are empowered to deprive persons--if even for only a short time--of the most cherished of all rights, the right of freedom. They are empowered to point an accusing finger at persons, and the weight of their authority leaves little room for challenge. They have the power, within certain confines, to take physical liberties with individuals. In short, they have an authority which no one else, public or private, has. When those officials come under fire for alleged irregularities in the performance of their duties, the cloud which results is potentially damaging not only to the official against whom the allegation is made, but to the organization as a whole. When a cloud hangs over such an organization, its efficiency deteriorates and its effectiveness diminishes. As has been recognized:

> ". . . a member of the police force must be above suspicion of violation of the very laws he has sworn and empowered to enforce . . . [policemen] can perform their duties only if they merit the trust and confidence of the mass of law-abiding citizens. Whatever weakens that trust tends to destroy our system of law enforcement." McCain v. Sheridan (Cal. 1958), 324 P.2d 923, 926.

In this respect, employees of law enforcement agencies differ substantially from other public employees.

The statute provides a reasonable classification that properly included Oberg and in so doing did not offend equal protection guarantees. State v. Turk (Mont. 1982), 643 P.2d 224, 39 St.Rep. 584. It has not been challenged by anyone outside the intended class.

Nor, as applied to Oberg, did its application require Oberg to incriminate himself to discuss matters of individual

17

privacy or to allow unlawful search or seizure of Oberg for the purpose of acquiring incriminating evidence. Oberg was informed that the test would be used for the purpose of an internal investigation of a citizen's complaint. There is no indication that the questions he would have been asked would not have been related specifically and narrowly to the performance of his official duties or that the results would have been used against him in a subsequent criminal proceeding. Under Garrity v. New Jersey (1967), 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562; Gardner v. Broderick (1968), 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082, 20 L.Ed.2d 1082; and, Uniformed Sanitation Men Assn., Inc. v. Sanitation Commissioner of the City of New York (1968), 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1989, such result would not be admissible.

To hold otherwise, reduces those who complain of police brutality to the status of second-class citizens by withholding normal investigative tools from use against police officers.

I would affirm.

_____
Chief Justice


I concur in the foregoing dissent of the Chief Justice.

_____
Justice

18