MR. CHIEF JUSTICE HASWELL,
dissenting:
I would hold Section 39-2-304(2), MCA, constitutional on its face and as applied to the facts of this case.
At the outset, Officer Oberg lacks standing to attack the statute on the ground that it requires other employees of law enforcement agencies (such as secretaries, clerks, dispatchers, meter maids and dog catchers) to submit to polygraph examinations. The normal rule is that constitutional rights are personal and a person cannot defeat a statute on the ground that it might in other applications violate the rights of third persons. United States v. Raine’s (1960), 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524; Broderick v. Oklahoma (1973), 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830; Wurtz v. Risley et al. (9th Cir. 1983), 710 F.2d 1438.
Secondly, the legislature is not required to express the policy and purpose behind its laws in order to withstand an equal protection attack based on an alleged discriminatory classification. Examples abound in Montana case law upholding legislative classifications absent an expressed purpose and policy for the classification: Linder v. Smith (Mont. 1981), 629 P.2d 1187, 38 St.Rep. 912 (upholding constitutionality of Montana Medical Legal Panel Act); Matter of Montana Pac. Oil & Gas Co. (Mont. 1980), 614 P.2d 1045, 37 St.Rep.1238 (upholding constitutionality of legislative classification applicable to all mineral producers holding unclaimed interests in minerals); State v. Gafford (1977), 172 Mont. 380, 563 P.2d 1129 (upholding constitutionality of classification of prior convicted felons for special treatment); Burritt v. City of Butte (1973), 161 Mont. 530, 508 P.2d 563 (establishing different classifications between resident freeholders and nonresident freeholders or resident nonfreeholders with respect to an annexation *288 statute).
Finally, I would hold that a rational relationship to a legitimate state interest exists in this case for classifying and treating “employees of law enforcement agencies” differently from other public employees.
This Court has recognized that “[t]he similar provisions of the equal protection clauses of the United States and Montana Constitutions provide generally equivalent but independent protection in their respective jurisdictions.” Emery v. State (1978), 177 Mont. 73, 580 P.2d 455, cert. denied, 439 U.S. 874, 99 S.Ct. 210, 58 L.Ed.2d 187. No basis can be found in the proceedings of the Montana Constitutional Convention to indicate an intention to treat our equal protection guarantee any differently than its counterpart in the United States Constitution. One who attacks a statute as violating equal protection has the burden of proving that the classification is arbitrary. State v. Jack (1975), 167 Mont. 456, 539 P.2d 726. Officer Oberg has failed to do so.
A rational basis exists for the exclusion of public law enforcement agencies from the prohibition on the use of lie detector tests. That rational basis is the use of the lie detector in internal investigations for the maintenance of a police department that “is of the highest integrity and beyond suspicion.” Eshelman v. Blubaum (1977), 114 Ariz. 376, 560 P.2d 1283, 1285. See also, McCain v. Sheridan (1958), 160 Cal.App.2d 174, 324 P.2d 923; Fichera v. State Personnel Board (1963), 217 Cal.App.2d 613, 32 Cal.Rptr. 159; Coursey v. Board of Fire and Police Commissioner (1967), 90 Ill.App.2d 31, 234 N.E.2d 339; Roux v. New Orleans Police Department (La.App. 1969), 223 So.2d 905; Seattle Police Officers’ Guild v. City of Seattle (1972), 80 Wash.2d 307, 494 P.2d 485; Richardson v. City of Pasadena (Tex.Civ.App. 1973), 500 S.W.2d 175; Dolan v. Kelly (1973), 76 Misc.2d 151, 348 N.Y.S.2d 478; Baker v. City of Lawrence (Mass. 1979), 409 N.E.2d 710; State Department of Highway Safety, Etc. v. Zimmer (Fla. 1981), 398 So.2d *289 463.
About ten states, including Montana, have passed similar legislation regulating the use of polygraph tests in employment situations. See, Alaska Stat. Section 23.10.037; Cal. Labor Code Section 432.2 (West 1971); Cal. Gov’t Code Section 3307 (West 1971); Conn. Gen. Stat. Section 31-51g (1983); 19 Del. Laws 704 (1979); Hawaii Rev. Stat. Section 378-21 (1976); Idaho Code Sections 44-903, 904 (1977), Md. Ann. Code Art. 100, Section 95 (1978); Mass. Gen. Laws Ann. Ch. 149, Section 19B (West 1982); Or. Rev. Stat. Sections 659.225, 659.227; R. I. Gen. Laws Section 28-6.1-1 (1979); Wis.Stat. Section 111.37 (1974). Of those nine other states, five states (Alaska, California, Connecticut, Idaho and Maryland) have enacted specific exclusions for a class of employees. The exclusions range from police departments and law enforcement agencies to federal agencies. In each instance, the state legislature recognized a rational basis for such classification.
The compelling interest which necessitates the classification was succinctly described by the Supreme Court of Washington: “A police department is a highly-sensitive agency entrusted and charged with the duty of protecting the community it serves from the evils of crime and corruption. To efficiently and effectively accomplish its mission it requires the respect and regard of the public, and when it has reason to believe that some of its members may be engaging in disreputable practices, it has a valid interest in purging itself of such practices through internal departmental procedures and the right to require the full cooperation of its membership to this end.” Seattle Police Officers’ Guild v. City of Seattle (1972), 80 Wash.2d 307, 494 P.2d 485, 490.
Public law enforcement officials occupy a unique position in that they are empowered to do certain acts which can have vast and far-reaching consequences. They are empowered to deprive persons — if even only for a short time — of the most cherished of all rights, the right of freedom. They *290 are empowered to point an accusing finger at persons, and the weight of their authority leaves little room for challenge. They have the power, within certain confines, to take physical liberties with individuals. In short, they have an authority which no one else, public or private, has. When those officials come under fire for alleged irregularities in the performance of their duties, the cloud which results is potentially damaging not only to the official against whom the allegation is made, but to the organization as a whole. When a cloud hangs over such an organization, its efficiency deteriorates and its effectiveness diminishes. As has been recognized:
“. . . violation of the very laws he has sworn and empowered to enforce. . . [policemen] can perform their duties only if they merit the trust and confidence of the mass of law-abiding citizens. Whatever weakens that trust tends to destroy our system of law enforcement.” McCain v. Sheridan (Cal. 1958), 160 Cal.App.3d 174, 324 P.2d 923, 926.
In this respect, employees of law enforcement agencies differ substantially from other public employees.
The statute provides a reasonable classification that properly included Oberg and in so doing did not offend equal protection guarantees. State v. Turk (Mont. 1982), [197 Mont. 311,] 643 P.2d 224, 39 St.Rep. 584. It has not been challenged by anyone outside the intended class.
Nor, as applied to Oberg, did its application require Oberg to incriminate himself to discuss matters of individual privacy or to allow unlawful search or seizure of Oberg for the purpose of acquiring incriminating evidence. Oberg was informed that the test would be for the purpose of an internal investigation of a citizen’s complaint. There is no indication that the questions he would have been asked would not have been related specifically and narrowly to the performance of his official duties or that the results would have been used against him in a subsequent criminal proceeding. Under Garrity v. New Jersey (1967), 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562; Gartner v. Broderick (1968), 392 U.S. *291 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082, 20 L.Ed.2d 1082; and, Uniformed Sanitation Men Assn., Inc. v. Sanitation Commissioner of the City of New York (1968), 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1989, such result would not be admissible.
To hold otherwise, reduces those who complain of police brutality to the status of second-class citizens by withholding normal investigative tools from use against police officers.
I would affirm.
MR. JUSTICE GULBRANDSON concurs in the foregoing dissent of the Chief Justice.